IN RE INTEREST OF J. AND R., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. IDA C., APPELLANT.
342 N.W.2d 660

Filed January 13, 1984.   No. 83-246.

Timothy J. Cuddigan of Marks, Clare, Hopkins, Rauth & Cuddigan, for appellant.

Donald L. Knowles, Douglas County Attorney, and Christopher E. Kelly, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from the decree of the separate juvenile court of Douglas County, Nebraska, which terminated the parental rights of Ida C. to her female children, J., age 10, and R., age 7. We affirm.

The natural father of J. and R. is deceased. Ida and her children became involved with the juvenile system in June 1978. A petition was filed alleging that J. and R. were homeless or destitute, or without proper support through no fault of a parent, guardian, or custodian. Neb. Rev. Stat. § 43-202(1) (Reissue 1978). Ida appeared and admitted the allegation. The court placed the children in a foster home and ordered Ida to embark on a course of conduct designed to rehabilitate her and to ensure a safe and adequate home for J. and R. The condition which gave rise to the initial action of the court is not described, except as a severe psychological depression which was treated with lithium, apparently a tranquilizer. The treating physician required that faithful ingestion of the tranquilizer be maintained so that a minimum, fixed level of the drug be present in the system at all times. Periodic blood screening . was required to ensure that Ida was following directions.

At the time J. and R. were placed in a foster home, a male, Fred C., was living with Ida, and the two were eventually married. The record reflects nearly 5 years of Social Services reports and peri-

odic reviews, and ended in March 1983 when the juvenile court terminated the parental rights.

Although there were frequent setbacks, specifically, missed Positive Parenting sessions, failure to maintain required levels of lithium, sporadic employment by both Fred and Ida, threats and imprecations directed to caseworkers, insufficient housing, and missed visitation appointments, there was progress, generally to the point where there were extended home visitations by the children. The overnight visitations were suspended by the juvenile court when evidence of sexual contact by Fred toward J. was made known to the court. Ida steadfastly refused to believe J.'s assertion of the objectionable conduct. The juvenile court did not specifically find that such conduct actually took place, but was inclined to believe the assertions of J.

A further incident took place on January 26, 1980. Apparently in an attempt to punish J., Fred forced J., then age 6, to remain outside in below-freezing temperatures for an extended period. Ida was present during this totally inappropriate punishment and did not act to protect the child. J. was admitted to Immanuel Hospital in Omaha, unconscious, suffering from hypothermia. In addition, on examination both J. and R. had multiple bruises in various stages of healing. The children were replaced in foster care.

The children have been in foster care continuously since that time. A motion for termination of parental rights, alleging that J. and R. lacked proper parental care, was filed August 1, 1980. Neb. Rev. Stat. § 43-209(6) and (2) (Reissue 1978).

Psychological studies established that both J. and R. greatly fear Fred C. and have no confidence that Ida will protect them from him. All involved, psychologists, social workers, and court service personnel, agree that the interests of the children require a fixed and permanent home and that placement with Ida, with Fred in the home, would be

damaging to the children's mental health and possibly dangerous to their physical well-being as well.

Ida's appreciation of the court's dilemma can be demonstrated in the following exchange at the termination hearing: "Q. If, as a result of the counseling by the therapist of the children and of yourself, it's the conclusion that it would be best for the children and yourself, in order for you to be reunited, that Fred be removed from the picture, would your answer still be the same, you would not divorce Fred? A. No. Q. No matter what? Even if it states that Fred shall not be a part of the children's lives, you will never accept that? A. Huh-uh."

This case is tried de novo in this court. *In re Interest of Hill*, 207 Neb. 233, 298 N.W.2d 143 (1980).

An order terminating parental rights must be supported by clear and convincing evidence. *In re Interest of M.*, 215 Neb. 383, 338 N.W.2d 764 (1983). A "termination of parental rights should indeed be a last resort, and should be implemented only when no other reasonable alternative exists." *Id.* at 389, 338 N.W.2d at 768.

As we view the matter, the juvenile court could not place the children with the natural mother, and indefinite foster care was unacceptable. The court clearly had no alternative but the termination. Ida clearly chose Fred over her children. She must live with that choice.

AFFIRMED.