IN RE INTEREST OF B.F.R., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. J.A.R., APPELLANT.
348 N.W.2d 125

Filed April 20, 1984. No. 83-711.

William A. Lynch of Monaghan, Tiedeman & Lynch, for appellant.

Donald L. Knowles, Douglas County Attorney, and Christopher E. Kelly, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from the order of the separate juvenile court of Douglas County, Nebraska, directing that the parental rights of J.A.R. to B.F.R., a male child of 5 years of age, be terminated. We affirm.

The action for termination was filed in July 1983. B.F.R. was removed from the home in which he was living with his mother, J.A.R., in June 1982 for temporary placement with a foster care family. J.A.R. was alleged to be suffering from a mental and emotional disorder which prevented her from providing necessary protection, supervision, and parental control. Neb. Rev. Stat. § 43-292(5) (Cum. Supp. 1982).

B.F.R. has lived in a foster home since that time, with periodic visitation with his mother every 2 to 3 weeks. At the time the child was placed in the foster home, the child, then 3 years old, had extremely limited language capabilities and displayed behavior best characterized in layman's terms as extreme insecurity and fear. Except for reactions

to the periodic visits with his mother, the learning disability and insecurity symptoms are lessening.

In June 1982 J.A.R. was admitted to the psychiatric unit of an Omaha hospital, where she remained until December 1982, as an involuntary patient. The diagnosis was a "schizophrenic disorder, paranoid type," manifested by assertions of persecution, disinterest in personal hygiene and grooming, and a marked decline in language skills.

After her release J.A.R. voluntarily lived in a structured residential home and continued her treatment with her psychiatrist. Her activity was limited to some limited personal grooming, light household duties, and sedentary activities such as watching television. She continues to take, on a regular basis, substantial quantities of antipsychotic medication. The diagnosis of the psychiatrist at the disposition hearing was "schizophrenic disorder, chronic paranoid type, which carries a somewhat guarded diagnosis." He testified that if J.A.R. discontinued taking the medication, a return to the offensive housekeeping and unhygienic practices was inevitable. In the opinion of the psychiatrist it was questionable whether or not J.A.R. would ever be able to provide a "very stable, consistent and nurturing environment for another human being."

J.A.R. testified at the disposition hearing that she took the medication because her doctor told her to, but that she did not need it. She still was of the impression that her "nervous breakdown" was precipitated by people in "the church" and that she was now well. The psychiatrist testified that the inability to discharge her parental responsibilities was due to a combination of the illness and a mild mental retardation.

Counsel assigns as error the finding by clear and convincing evidence that the appellant was unable to discharge her parental responsibilities because of mental illness or mental deficiency which will continue for a prolonged, indeterminate period of time.

We agree that the natural rights of a parent to the custody of a child cannot be terminated absent clear and convincing evidence. *In re Interest of J. and R.*, 216 Neb. 183, 342 N.W.2d 660 (1984).

The argument that the evidence does not support the findings of the juvenile court is not meritorious. This court, along with appellant's counsel (and J.A.R.'s psychiatrist), may indeed hope that by some quantum leap serious mental illnesses may be found to have resulted from chemical imbalances in the brain. However stated, that faint hope cannot stand in the face of the reality that J.A.R. is a chronically ill person, unable to face her own illness, and able to maintain herself in a minimal sense in a supervised setting only with relatively large doses of medication. The psychiatrist holds little or no hope for her recovery. B.F.R., now 5 years old, cannot be made to face this uncertainty. His best interests and his future stability require that parental rights be terminated.

AFFIRMED.