IN RE INTEREST OF S.A.S., A CHILD UNDER 18 YEARS
OF AGE.
STATE OF NEBRASKA, APPELLEE, V. M.L.S., APPELLANT.
IN RE INTEREST OF J.S., A CHILD UNDER 18 YEARS
OF AGE.
STATE OF NEBRASKA, APPELLEE, V. M.L.S., APPELLANT.

348 N.W.2d 138

Filed May 11, 1984. Nos. 83-533, 83-534.

Clay B. Statmore of Statmore Law Offices, for appellant.

Michael G. Heavican, Lancaster County Attorney, and Mary L. Thramer, for appellees.

Roberta S. Stick, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

These are appeals from the judgments of the separate juvenile court of Lancaster County, Nebraska, which terminated the parental rights of M.L.S., the mother of J.S., a male child born March 1, 1982, and S.A.S., a female child born January 25, 1980. The cases were consolidated for purposes of appeal in this court. The father of the two minor children is

unknown. We review the matter de novo, keeping in mind that an order terminating parental rights must be supported by clear and convincing evidence. *In re Interest of J. and R.*, 216 Neb. 183, 342 N.W.2d 660 (1984).

The appellant assigns only one error, that being that the separate juvenile court's orders terminating the parental rights were not supported by clear and convincing evidence.

S.A.S. was adjudicated a dependent child as defined by Neb. Rev. Stat. § 43-202(1) (Reissue 1978), now Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1982), on May 30, 1980. By order, the court determined that M.L.S. was mentally deficient and that the mental deficiency affected her ability to provide adequate care for the child. With the assistance of the Lancaster County Division of Public Welfare, M. was directed to correct the conditions of neglect. Shortly after the birth of J.S., he was placed in foster care by M.L.S., and placement in foster care of both children on a court-ordered basis was made on July 16, 1982.

The record discloses that M.L.S. was the natural mother of two other children. The first, born in wedlock, was in the custody of the child's father. The parental rights to the other child were terminated at an earlier, unspecified time. M.L.S., at all times pertinent, resided in Lincoln, Nebraska, in rental housing with her father and mother. The mother was a disabled person, and M., through a combination of concern for her mother, whose health was suspect, and of her father, whom she recited to the welfare department as physically abusive to her mother, wished to continue living with her parents and steadfastly at all times in the proceedings refused to live elsewhere, even in the supervised home that the welfare department was in a position to provide her. The supervised home would involve living with one or two adults who would constantly monitor M. in her care for her chil-

dren. The evidence further discloses that M. is in the mild to moderately retarded intellectual range and is in the developmental stage of somewhere between the middle of the first and second grade.

Summarizing, the physical condition of the home from which the children were removed can honestly be described as atrocious. The visiting nurses, welfare workers, and caseworkers who testified established the fact that not only was the older child, S.A.S., habitually filthy and uncared for, she was frequently found lying in an uncovered crib, soaked and reeking of urine and feces. There was often a noted absence of clean diapers, formula, and clothing for the children. The house itself had literally thousands of roaches climbing over everything, including the child's crib, the child's bottle, on walls, cabinets, and on the refrigerator. Garbage was frequently stored in and about the house. There were repeated failures in keeping physician appointments and in administering the children's prescribed medicine. By reason of the refusal of M.'s father to submit to any kind of budget recommendation, heat was frequently shut off, although the evidence indicates the combined income of M. and her father exceeded $1,000 per month. In addition, M.'s father maintained that "no one was going to tell him what to do with his money."

An extended, almost heroic, effort on the part of the social workers to teach M.L.S. even the most rudimentary skills of cleanliness and personal hygiene proved futile.

It is overwhelmingly apparent from the record that the children cannot be returned to any home setting without live-in, active supervision of other responsible adults. The appellant has established that she is completely uninterested and probably incapable of taking even the barest precautions for the health and safety of her children.

The separate juvenile court was eminently correct in determining that the children could not be re-

placed in the home M. was sharing with her parents. M. steadfastly refuses to leave the family home, claiming that it is absolutely necessary for her to remain for the protection of her mother.

Again, as in *In re Interest of J. and R.*, 216 Neb. 183, 186, 342 N.W.2d 660, 662 (1984), "[a]s we view the matter, the juvenile court could not place the children with the natural mother, and indefinite foster care was unacceptable. The court clearly had no alternative but the termination. Ida clearly chose Fred over her children. She must live with that choice."

M.L.S. has chosen a lifestyle absolutely inconsistent with even the most rudimentary standards of child care. The best interests of the children require termination. M. has made her choice. She must live with it, her children must not.

AFFIRMED.