IN RE INTEREST OF A.L.N., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. S. N., APPELLANT.
392 N.W.2d 780

Filed August 22, 1986. No. 85-754.

John P. Heitz of Cronin, Symonds & Heitz, for appellant.

Boyd W. Strope, Holt County Attorney, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This is an appeal from an order terminating parental rights to a minor child. The natural mother, S.N., appeals from an order originally entered by the county court for Holt County, Nebraska, and thereafter affirmed by the district court for Holt County, which found that the parental rights of S.N. to her minor child, A.L.N., should be terminated.

No benefit to anyone can be served by detailing all of the facts of this case. Suffice it to say it was a self-fulfilling prophecy. The natural mother, in her middle 20s, gave birth to this minor child in November of 1980. It appears from the record as if the identity of the child's father is unknown. During the first 26 months of the child's life, she lived with her natural mother. From January 19, 1983, however, the child has been in foster care for all but 1 month.

The Department of Social Services' initial contact with the mother and child came shortly after the child's birth, when a call was received by the department from someone who was concerned about the manner in which the child was being cared for. While nothing was done immediately, soon thereafter, on February 25, 1981, contact was again made by the welfare department with the mother. The caseworker who made the initial contact testified that the home was definitely "not neat" and that there was an "objectionable smell" throughout the whole house. The caseworker testified that in 90 to 95 percent

of the times she visited the house it was "a mess." Furthermore, she testified that the mother improperly bathed the child and had problems feeding the child. Custody of the child was temporarily taken from the mother but was thereafter given back to her and she was afforded an opportunity to mend her ways. The record discloses, however, that little, if anything, was done in that regard. One of the mother's housemates, on several occasions, called the police to indicate her concern, and at a hearing another housemate testified:

> A. Well, she wasn't feeding her right. And, I have — I did get up one morning, [the child] was running around outside with no clothes on whatsoever. And, anytime [the child] did anything she would pop her or yell at her, tell her to fuck off or she'd say fuck you daughter.

After this earlier hearing the mother's right to the child was terminated. However, due to the fact that improper notice was given, the decision was reversed on appeal.

Soon thereafter, the State, once again, began termination procedures. Throughout the next 16 months, various hearings were held regarding the mother's fitness. During all of this time, the child was in foster care. The mother apparently agreed to follow a case plan developed for her. Her compliance with the plan, however, was extremely poor. Part of the reason she failed was due to the fact that she began living with a male companion who was an alcoholic. During this time, she lived in several cities throughout Nebraska and rarely contacted her caseworker or made any real efforts to work on her case plan. Furthermore, during the 22 months from the time she lost custody of the child until the time of the final termination, she made little effort to take advantage of her visitation rights with her daughter. She claimed that this was due to the fact that the foster parents told her that the visits upset the child. However, she was somewhat lax with regard to showing up for court hearings as well. And while it appears that in the months before the final termination hearing, the mother was making some progress, it was clear that the progress was slow and would not, for a long time, if ever, be sufficient to permit her to adequately care for the child.

On October 2, 1984, the county court determined the child to

be a person within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1984), but gave the mother until December 4, 1984, in which to "straighten up." On December 4, 1984, the final dispositional hearing commenced but was continued to March 19, 1985, in order to receive mental health evaluation reports on both the mother and the child. Finally, on March 19, 1985, the court terminated the parental rights·of the mother to the child. An appeal was taken by the mother to the district court for Holt County, Nebraska, which affirmed the decision.

In proceeding to review the order, we are mindful of the fact that an appeal to the Supreme Court from an order terminating parental rights is reviewed by this court de novo on the record. See *In re Interest of V.B. and Z.B.*, 220 Neb. 369, 370 N.W.2d 119 (1985). Such an order must be supported by clear and convincing evidence and should be issued only as a last resort where no reasonable alternative exists. See *In re Interest of P.F.*, 222 Neb. 44, 381 N.W.2d 921 (1986). Nevertheless, the primary consideration in such cases is the best interests of the child. As we observed in *In re Interest of D.*, 218 Neb. 23, 29, 352 N.W.2d 566, 570 (1984): "A child cannot be left suspended in foster care, and should not be required to exist in a wholly inadequate home. Further, a child cannot be made to await uncertain parental maturity."

A review of the record simply discloses that, try as she might, the mother in this case was simply unequipped and would remain unequipped to provide the child with the type of care that a child was entitled to receive. When the child was in the custody of the mother, the child was inadequately cared for. And when the child was out of the custody of the mother, the mother nearly abandoned her.

When one reviews the entire record, though one may disagree with specific findings made by the county court, a de novo examination of the overall record results in the conclusion that the best interests of the child demand that the mother's parental rights be terminated. As we observed in *In re Interest of S.*, 217 Neb. 369, 372, 348 N.W.2d 138, 140 (1984), and earlier in *In re Interest of J. and R.*, 216 Neb. 183, 342 N.W.2d 660 (1984): " '[T]he juvenile court could not place the children

with the natural mother, and indefinite foster care was unacceptable. The court clearly had no alternative but the termination. . . .' "

The evidence in this case clearly and convincingly establishes that the mother has simply failed to take advantage of the opportunities afforded her, both by the court and by the caseworkers. Her inability to care for her child and her apparent indifference to that inability has persisted for nearly all of the child's young life. It indicates that the mother is simply not able to fulfill her duties as a mother at any level. Although the right of the parent to maintain custody of his or her child is a natural right protected by the Constitution, such parental right is subject to the paramount interest which the public has in the protection of the rights of a child. See *In re Interest of M.*, 215 Neb. 383, 338 N.W.2d 764 (1983). When a parent cannot rehabilitate herself within a reasonable time, the best interests of the child require that a final disposition be made without delay. See, *In re Interest of M., supra; In re Interest of R.D.J. and K.S.J.*, 215 Neb. 724, 340 N.W.2d 415 (1983). We believe that the decision of the district court affirming the decision of the county court was correct and must be affirmed.

AFFIRMED.