REQUESTED BY: Harold W. Clarke, Director Department of Correctional Services
Question:
 What authority does the Department of Correctional Services have to place juveniles assigned to its care in treatment programs, and what standard of care must be exercised by the Department in conducting such placements?
Answer:
 Both statute and case law empower the Department to place" juveniles in treatment programs if the Department determines such a course of action will aid in rehabilitating that juvenile; in placing juveniles in treatment programs, the Department must act reasonably.
The Department of Correctional Services (DCS) is statutorily empowered to place juveniles, assigned to it by juvenile courts of proper jurisdiction, in rehabilitation programs, even if a juvenile's parent or parents have not consented to such a placement. This authority stems from specific statutory provisions and parents patriot powers.
The Legislature has provided the classification of juvenile that can be assigned to DCS's care. The relevant statute helping to answer the instant question is a provision that delineates authority to treat a juvenile once that juvenile has been assigned to DCS. Neb.Rev.Stat. § 83-927 (Reissue 1987) in pertinent part provides that DCS shall "develop specialized programs and services within the Division of Juvenile Services for the guidance, treatment, and rehabilitation of juveniles committed to the division." While not specifically interpreting this language, the court has defined an agency's power to promulgate regulations that comport with legislative guidelines. In Cornhusker Christian-Children's Home v. Department of Social Services, 227 Neb. 94,416 N.W.2d 551 (1987), the court dealt with the Department of Social Services' authority to promulgate regulations governing licensed child care facilities. The court held that the Department of Social Services has the authority to impose standards on child care facilities that protect children's welfare. The two part test delineated by the court supporting why the Department of Social Services has legal authority to act also explains why DCS can promulgate treatment programs for juveniles assigned to its care.
First, in order for a state agency to act, it must be authorized by statute to do so. Id. at 563. As applied to the instant question, this prong of the Cornhusker Children's Home test demands that DCS have statutory authority to promulgate regulations relating to the formulation of individual treatment plans. Neb.Rev.Stat. § 83-927 (Reissue 1987) provides that DCS is responsible for the rehabilitation of juveniles. This is a clear statement of legislative intent to import to DCS the necessary authority to conduct programs or formulate treatment programs allowing for the successful rehabilitation of juveniles. The second element of the test assessing an agency's authority to act is whether the action "modifies, alters, or enlarges" that agency's statutorily imposed duties. Id. at 563. Because DCS must be empowered to formulate and implement treatment programs in order that it be able to rehabilitate juveniles assigned to it, certainly the formulation of treatment programs does not modify or enlarge DCS's statutorily conveyed responsibilities. Therefore, according to the dictates of the Cornhusker Children's Home test assessing compliance with statutory mandates, DCS is empowered to either promulgate regulations governing the formulation of treatment programs or formulate treatment programs themselves.
Nebraska's parens patriae power also empowers DCS to formulate treatment programs for juveniles assigned to its care. Essentially, parens patriae enables a state or its agencies to insure children's welfare. Indeed, Nebraska courts have established that parens patriae is a doctrine that is both an enabling power and a mandate requiring the state to act. The parens patriae doctrine stems from the legal principles that the state is serving the public's paramount interest in the protection of children from neglect, especially in situations where a child's welfare is endangered. In re Interest of A.L.N., 223 Neb. 675,392 N.W.2d 780 (1986). Other states have more specifically defined the state's capacity to act under its parens patriae powers. For instance, the issue before the court in In re T.D., 81 Ill. App.3d 369,36 Ill.Dec. 594, 401N.E.2d 275 (1980), was whether the state violated a juvenile's constitutional rights by assigning that juvenile, who had committed a misdemeanor, to the Department of Corrections for an indeterminate term. In defining the parameters of the patens patriae doctrine and state agencies' ability to act on behalf of the state in carrying out that doctrine, the court stated that "[t]o this end the juvenile court acts as parens patriae . . . and the court and its allied agencies must be enabled to give the minor the care and guidance the Act is designed to provide. It therefore can be seen that the state's parens patriae power authorize the state agencies to provide needed care and guidance, especially in situations where the state is acting to comply with statutes formulated to protect the welfare of children.
Furthermore, because the state acts to protect children's welfare, the state can act unilaterally to formulate treatment plans if necessary. As a practical matter, you may want to arrange parental involvement whenever reasonably possible unless to do so would endanger the child or hinder the rehabilitation of the child.
The final issue to be dealt with relates to DCS's potential liability arising out of the conduct of its treatment programs. The court has interpreted the standard of liability to be imposed on state agencies in their conduct of treatment programs to be negligence. In Koepf v. County of York, 198 Neb. 67, 251 N.W.2d 866 (1977), the court dealt with when the Department of Social Services could be held liable for its placement of children in foster homes. The court stated that the Tort Claims Act imposed a reasonable care standard on the Department. The court explained that the placement of children "once committed to the custody of the welfare department must be accomplished with the reasonable" care commensurate with the circumstances." Id. at 74. Koepf dealt with when a state agency could be held liable for its placement of children in treatment programs. That holding applies to when DCS can be held liable for its placement of children in treatment programs. Koepf establishes that DCS must act reasonably when placing a juvenile in a treatment program.
Respectfully submitted,
 DON STENBERG Attorney General