IN RE INTEREST OF M.W.M., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. R.F.M. AND J.M.M., APPELLANTS.

381 N.W.2d 134

Filed February 7, 1986.   No. 85-122.

James H. Monahan, for appellants.

Donald L. Knowles, Douglas County Attorney, and Elizabeth G. Crnkovich, for appellee.

Kenneth P. Weiner of Wall, Wintroub & Weiner, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

GRANT, J.

The natural parents of M.W.M., a child under 18 years old, appeal the order of the separate juvenile court of Douglas County, Nebraska, terminating their parental rights. Appellants assign three errors: (1) That the order was contrary to law; (2) That the court erred in "finding that they were unfit parents"; and (3) That the court erred in failing to dismiss the case when 3 years had elapsed between the time "that the Court found the Appellants unfit, and the Court's action terminating their parental rights." We affirm.

An order terminating parental rights must be based on clear and convincing evidence and is reviewed in this court de novo on the record, giving weight to the fact that the trial court observed the parties and witnesses and judged their credibility. *In re Interest of M.L.B., ante* p. 396, 377 N.W.2d 521 (1985); *In re Interest of M.S.*, 218 Neb. 889, 360 N.W.2d 478 (1984).

The first two assignments of error may be considered together, as they contest the sufficiency of the evidence to support the court's order of termination. With regard to the sufficiency of the evidence before the court, the record shows the following.

In February 1974 Child Protective Services in Douglas County received a referral concerning the alleged filthy condition of the home maintained by appellants and the delayed development of the child born December 24, 1973. From 1974 to 1977 Child Protective Services caseworkers, the Visiting Nurse Association, ENCOR (Eastern Nebraska Community Office of Retardation), the Parent-Child Center, and other agencies worked with appellants in attempts to correct the home condition.

On August 5, 1977, a petition was filed in the Douglas County Separate Juvenile Court seeking termination of the parental rights of R.F.M. and J.M.M. On November 22, 1977, the court entered an order finding that the child was one within the meaning of Neb. Rev. Stat. § 43-202(1) (Cum. Supp. 1976), which then provided that the juvenile court had exclusive original jurisdiction of any child under 18, "who is homeless or destitute, or without proper support through no fault of his parent . . . ." The order placed the child in foster care and set out

a plan for the rehabilitation of the parents and ordered the parents to comply with that plan. The record does not show the specific disposition of this 1977 proceeding, but evidence indicates that the child was returned to appellants' home in August of 1978.

On December 15, 1981, a petition was filed in the same court in a new case concerning M.W.M. This petition alleged that the child was one within the meaning of Neb. Rev. Stat. §§ 43-202(2)(b) and 43-209(2) (Reissue 1978), in that the child lacked proper parental care because of the faults or habits of his natural parents. The petition alleged, in part, that appellants were at fault in that:

A. The residence of . . . said child, is frequently in a state of disarray, to wit: Garbage, trash, rubbish in large quantities are strewn throughout the yard; junk, trash, rubbish, dirty clothes, garbage are strewn throught [sic] the residence in such large quantities that a pathway is required for movement through the residence; the kitchen is covered with trash, junk, rubbish, decayed food on the floor, cabinets, pots, pans and dishes; a putrid odor permeates the entire residence; the residence is infested with roaches and fleas.

. . . .

C. Said child has been observed in school wearing clothes which were infested with cockroaches.

. . . .

E. On or about November 25, 1981, said child was removed from the residence of [R.F.M.] and [J.M.M.] by law enforcement authorities after a determination by said officers that the residence was unfit for human habitation.

The petition prayed that the court render appropriate orders for the care of the child and terminate the parental rights of appellants.

A detention hearing was held on January 4, 1982, pursuant to Neb. Rev. Stat. § 43-205.04 (Reissue 1978). Appellants were present with counsel. Two witnesses testified on behalf of the State, and R.F.M. testified on behalf of appellants. Martha Husebo, a police officer with the juvenile court unit of the

Omaha Police Department, testified that she went to the home of appellants on November 25, 1981, regarding a complaint from school authorities that M.W.M. was coming to school in a filthy condition with cockroaches on him, which precipitated giving the child a bath at school. The child's father let the police officer into the home. The officer testified that the house was "littered with trash wall to wall to a point where it had a path about [12 to 18 inches] wide to walk through the entire house in." The police officer then called for the identification bureau to take pictures of the "horrible mess" she observed. These pictures were received in evidence and show the condition of the home to be in the condition described by Officer Husebo. The officer testified that she did not consider the home "an inhabitable and sanitary environment for a child" and that "a child certainly shouldn't have to put up with this. The child didn't create it." The officer told the appellants that she was taking the child and that they should "start cleaning up this filthy mess."

Jan Rashid, a caseworker with Child Protective Services, testified that after she had been refused entry to appellants' home on a previous day, she returned to make a scheduled visit on November 24, 1981. On that day the caseworker entered the house with J.M.M. through the back door. She testified that she "made it through half the kitchen, but the stench of the house drove me back outside. It was terrible, the combination of urine, decayed human feces. It was an ungodly stench." The caseworker told J.M.M. that the Omaha Police Department would be called. Appellants refused to permit a cruiser officer inside the house, and the following day Officer Husebo began her investigation described above.

On December 1, 1981, appellants went to the office of Rashid. Appellants stated they had hired a woman to clean the house and had had some plumbing repaired. It was agreed that the caseworker should visit the house the next week. This visit was postponed by appellants until December 15. On this visit Rashid testified that the situation was improved, but it was "still very, very filthy, very, very infested with bugs." She further testified, "I watched [J.M.M.] make some sandwiches for [R.F.M.]. It turned my stomach. There were cockroaches

running around on the cutting board." On cross-examination this witness testified that after the first court case involving these parties was terminated in August of 1978, the child's situation was again referred to Child Protective Services in September of 1978. Child Protective Services kept that referral open until 1980 when the case was closed. During that time, the caseworkers' reports showed consistently filthy home conditions.

R.F.M. testified at this hearing to the effect that the parents' home had been cleaned up considerably by December 29, 1981. When asked about "the continual filthy conditions that have existed since 1974 or have been reported since 1974 until 1982," he testified that he had no money to hire anyone to come in and help him clean. He then admitted that services had been offered to him, but did not explain his need for professional cleaning help. He also testified that he was employed as a security guard, that his wife had not had any ill health, but that M.W.M. had epilepsy.

At the conclusion of this detention hearing, the court placed the child in foster care and ordered psychological and psychiatric testing for the child, pending an adjudication hearing, which was held on February 11, 1982.

At that hearing the parents were present with their counsel. Before any further evidence was adduced, the parents admitted certain of the allegations set forth in the petition filed in the juvenile court on December 15, 1981, in this case. Appellants specifically admitted paragraphs A, C, and E of that petition as set out above. Before accepting appellants' pleas of admission to those facts, the court asked each of the parents if the recited facts were true and if each of them knew that by admitting those facts the court could terminate his or her parental rights. Each of the parents stated that each understood and made such admissions freely. The court then found that M.W.M. was a child as defined in §§ 43-202(2)(b) and 43-209(2) and took under advisement the question of the termination of the parental rights of appellants.

The above recital sets out the facts before the court when the order terminating appellants' parental rights was made on January 9, 1985. Appellants contend that the evidence before

the court was not sufficient to support the court's order. In support of their contention appellants state in their brief at 5, "Mr. and Mrs. [M.] were determined [by the court] to be unfit parents because they were not very good at house keeping. . . . Their sole transgression is that their housekeeping and lifestyle is not socially acceptable."

In *In re Interest of D.*, 209 Neb. 529, 308 N.W.2d 729 (1981), we set out the general proposition that we are not ready to terminate parental rights solely upon the lack of good housekeeping standards. We do not depart from that position. In our review of this case, however, the facts go far beyond consideration of good housekeeping. Without setting out further the factual details referred to above, we hold that the evidence before the court was clear and convincing and fully supports the court's finding that appellants' parental rights should be terminated. The facts show clearly that the court was not faced with poor housekeeping or an acceptable difference in lifestyles but, rather, a situation presenting the question whether this child should live as a human being or as a subhuman creature. The juvenile court's order was fully supported by the facts and by the law. See *State v. Souza-Spittler*, 204 Neb. 503, 283 N.W.2d 48 (1979). We further note that consideration of the best interests of the child fully supports the court's order of termination. A primary consideration in a case involving termination of parental rights is the best interests of the child. *In re Interest of M.L.B., ante* p. 396, 377 N.W.2d 521 (1985). The effect on a child of being sent to school so infested with cockroaches as to require bathing at school cannot be measured. No child should be required to endure such humiliation, to say nothing of the personal hygiene problems involved.

Insofar as appellants contend that their parental rights should not have been terminated without allowing the parents an opportunity for rehabilitation, neither the law nor the facts support their position. The State is not required to provide an opportunity of rehabilitation before terminating parental rights, although the court may choose to do so. *In re Interest of M.L.B., supra; In re Interest of Wagner and Russell*, 209 Neb. 33, 305 N.W.2d 900 (1981). The facts of this case show that

between 1974 and the filing of these proceedings on December 15, 1981, appellants were provided time and help in the rehabilitation of their home. In 1977 a specific order of rehabilitation was offered to appellants. They have chosen not to change their way of living since 1974 and cannot now be heard to complain about the lack of a chance to change.

We find there was more than sufficient evidence to support the court's order terminating appellants' parental rights.

Appellants' remaining contention is that the court erred in failing to dismiss this case "when three years had elapsed between the time that the Court found Appellants unfit, and the Court's action terminating their parental rights." We determine that, in the procedural posture of this case, the court did not err.

As set out above, after a detention hearing on January 4, 1982, and a hearing on February 11, 1982—at which hearings the State adduced the evidence set out above, and appellants agreed the facts were true—the parties returned to court for a further hearing on March 23, 1982. On that day appellants, with their counsel, and the guardian ad litem again appeared before the court and announced that appellants had signed a relinquishment for purpose of adoption of the child. The court interrogated the parents concerning this relinquishment and then entered its order continuing the case for 9 months "pending completion of adoption."

On June 1, 1982, the appellants, through new counsel, filed an "Application for Hearing" alleging that the relinquishment was signed "under the threat of termination of parental right" and was not voluntary. Appellants, with their new counsel, appeared again before the juvenile court on June 28, 1982, and asked the court for leave to adduce evidence to substantiate the claims in their motion. The juvenile court refused to entertain a hearing on the voluntariness of the relinquishment, permitted appellants to withdraw their motion, and continued the matter for 30 days.

Appellants then filed another motion, requesting that the court "with or without further hearing rule on termination of their parental rights, or in the alternative that the Court dismiss the case." A hearing was held on this motion on July 28, 1982.

At this hearing appellants stated to the juvenile court that the state Department of Public Welfare refused to return the relinquishment which the parents had signed at the hearing of March 23, 1982, and which the appellants had attacked, as being involuntary, in their June 1, 1982, motion. The court stated its position that the voluntariness of the relinquishment and the legal disagreement between appellants and the State had to be determined in another court and that, pending such proceedings, the juvenile court would not dismiss this case.

The validity of appellants' relinquishment was contested in a habeas corpus proceeding in the district court for Douglas County. The relinquishment was finally determined, in this court, to be involuntary and therefore invalid. *McCormick v. State*, 218 Neb. 338, 354 N.W.2d 160 (1984).

After the mandate in that case was issued, the parties again appeared before the juvenile court on January 8 and 29, 1985, for determination as to the termination of appellants' parental rights. The court had retained jurisdiction of the case and that issue since March 23, 1982. The guardian ad litem began adducing evidence at the January 8, 1985, proceeding, when the proceeding was interrupted. The guardian ad litem then withdrew exhibits which had been marked and substituted certified copies of portions of the 1977 proceedings involving the parents and child. The court then recited the evidentiary record before the court, including the appellants' pleas of admission at the February 11, 1982, hearing, to the facts as set out above, and appellants' counsel's motion to dismiss. The court then stated:

> It's my understanding, now, you're all prepared at this time to submit the case based on those facts with the admission of today's motion by Mr. Monahan, which was [overruled] and the receiving of the certified copies of a previous record before Judge Moylan of this Court in 1977, I believe; is that correct, gentlemen?

All counsel, including appellants' counsel with appellants present, specifically agreed to the submission of the case on that basis.

An examination of the record in this case shows that the delay in this case between March 23, 1982, and the further

proceedings in January 1985 was precipitated solely by appellants. The appellants' execution of a relinquishment on March 23, 1982, and their subsequent legal attacks against that relinquishment forestalled further evidence by the State on the issue of termination of appellants' parental rights. Facts had been adduced at the detention hearing of January 4, 1982, which, when coupled with the parents' admissions at the hearing of February 11, 1982, were far more than sufficient to terminate parental rights.

When the matter was submitted to the court on January 8, 1985—by agreement of counsel with no further evidence adduced—the court was free to consider the entire proceedings before it. In *State v. Norwood*, 203 Neb. 201, 204, 277 N.W.2d 709, 711 (1979), we stated: "The court properly took into consideration all of its earlier proceedings. The matter before the juvenile court was a continuation of the same proceeding."

In this case the January 8, 1985, hearing was a continuation of the proceeding begun on December 15, 1981. That hearing had been interrupted and delayed by appellants' actions, set out above. The juvenile court was delayed in its determinations by appellants alone. When the parties agreed to submit the case to the court on the 1977 proceedings, the 1982 hearings, and appellants' motion to dismiss, the court did not err in entering its termination order of January 9, 1985.

AFFIRMED.