IN RE INTEREST OF M.B., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. BRIAN F. AND DEBORA P.,
APPELLANTS.
IN RE INTEREST OF R.P., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. DEBORA P., APPELLANT.
IN RE INTEREST OF J.P., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. DEBORA P., APPELLANT.
386 N.W.2d 877

Filed May 16, 1986.    Nos. 85-607, 85-608, 85-609.

John M. Gerrard of Domina & Gerrard, for appellant Debora P.

Ross A. Stoffer of Mueting, DeLay & Stoffer, for appellant Brian F.

W. Bert Lammli, Stanton County Attorney, and Richard D. Stafford, guardian ad litem, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

The county court for Stanton County, Nebraska, sitting as a juvenile court (and hereinafter referred to as the juvenile court) found clear and convincing evidence sufficient to terminate the parental rights of (1) the natural mother, Debora P., to her daughter, M.B., born to Debora P. and Brian F. out of wedlock on October 4, 1976, and to her two sons, J.P. and R.P., born in wedlock to Debora P. and James P. on May 6, 1978, and December 7, 1979, respectively; (2) Brian F., the natural father of M.B.; and (3) James P., the natural father of J.P. and R.P. While each case was separately filed and docketed, they were tried together and heard together on appeal in both the district court and this court. Debora P. appealed the juvenile court orders terminating her parental rights to all three children. Brian F. separately appealed the order terminating his parental rights to M.B. James P. did not appeal.

Debora P. alleges that the juvenile court erred in three respects: (1) In finding there was sufficient evidence to terminate Debora P.'s parental rights; (2) In finding that it was in the children's best interests to terminate her parental rights; and (3) In failing to order less restrictive alternatives which should have been used prior to termination of her parental rights. Brian F. alleges that the juvenile court erred in three respects: (1) In finding there was sufficient evidence to permanently terminate his parental rights; (2) In failing to find that his rights to due process and equal protection were violated by the State's failure to notify him of any proceedings and by the failure to allow him to participate in a rehabilitation plan; and (3) In finding that the best interests of the child are the proper standard in terminating parental rights. For the reasons herein set out, we affirm the orders of the district court affirming the judgments of the juvenile court.

An appeal from an order terminating parental rights is reviewed by this court de novo on the record, giving weight to the fact that the trial court observed the parties and witnesses and judged their credibility. *In re Interest of M. W.M.*, 221 Neb. 829, 381 N.W.2d 134 (1986). An order terminating parental rights must be based upon clear and convincing evidence, and termination of parental rights should be a last resort. *In re*

*Interest of P.F., ante* p. 44, 381 N.W.2d 921 (1986).

Juvenile court petitions were filed on September 16, 1981, in Stanton County, Nebraska, alleging that each child was within the meaning of Neb. Rev. Stat. § 43-202(2)(b) and (c) (Reissue 1978), in that each child lacked proper parental care and supervision in particular respects set out in each petition. Each petition alleges Debora P. was the mother of the child involved. The petitions concerning R.P. and J.P. alleged that James P. was their father. The petition concerning M.B. alleged her father was not known to the Stanton County attorney, who filed the petition. On September 30, 1981, the court ordered that care, custody, and control of the children was granted to "Multi-County Social Service Unit #141," with physical custody to be at the discretion of the unit, which left it with Debora P. On October 14 these orders were reviewed and continued. After a change in conditions the children were removed from Debora P.'s physical custody on October 22, 1981, and since that time they have not been returned to her. This action by the social worker was reviewed and affirmed by the court on November 4, 1981.

Supplemental juvenile court petitions were filed, and after a hearing on November 20, 1981, the court found the children to be within the meaning of § 43-202(2)(b) and (c) and placed the children in the custody of the Department of Public Welfare (the Department). The matters were set for review by the court on June 1, 1982, and specific orders were entered concerning the children and directing Debora P. to engage in specified activities in connection with her parenting and homemaking skills. On June 15, 1982, a review hearing was held, and Debora P. with her attorney, the children by their appointed guardian ad litem, and a representative of the Department appeared. After the hearing the court again ordered that custody of the children remain in the Department, granted Debora P. visitation rights, and ordered psychological and psychiatric evaluations of Debora P.

The matters were again reviewed in a review hearing on January 18, 1983. The orders issued after this hearing required that Debora P. receive counseling at a mental health center, attend a drug and alcohol evaluation center, obtain and

maintain a permanent type of residence, seek employment, and attend parenting classes. The evidence adduced at this hearing is not in the record before us, but the court orders provided in part:

> That Debora [P.] and James [P.] are hereby ordered that they shall not threaten or harass, verbally or physically, directly or indirectly, anyone connected with this case, including the Department of Public Welfare and its agents, the foster parents or anyone else connected with the care of the minor children, or any persons who may contact the Department of Public Welfare or the County Attorney concerning facts or evidence related to this case, and that if either Debora [P.] or James [P.] violates this provision of the order, they are hereby put on notice that the Court will consider such actions to be contempt of Court.

Another review hearing was held on June 21, 1983. Orders similar to the foregoing order were again entered.

On March 16, 1984, a "Supplemental Juvenile Court Petition" was filed in each case. These petitions sought termination of the parental rights of Debora P. to all three children, the termination of the parental rights of James P. to J.P. and R.P., and the termination of James P.'s rights as the stepfather of M.B. This latter petition alleged that the natural father of M.B. was unknown. A hearing on the petitions was set for May 16, 1984. "Notice of Termination of Parental Rights" regarding M.B. was published three times in an appropriate newspaper. An affidavit was filed on April 18, 1984, concerning mailing of notice of the termination hearing relating to M.B. to named interested parties, including, for the first time shown in the transcript, notice to Brian F. at a Sioux City, Iowa, address.

On May 16, 1984, a hearing was held in juvenile court. Debora P. and James P., together with their respective attorneys, were present at this hearing, as was the Stanton County attorney. Brian F. also was at this hearing and "in open Court alleged that he was the natural father of the minor child, [M.B.]." Brian F. requested that counsel be appointed for him and that the matter be continued. The court appointed an

attorney for Brian F. and continued the hearing until June 25, 1984. The court also ordered blood testing for the purpose of determining paternity, and ordered a home study be conducted of the residence of Brian F. and his wife, in Sioux City, Iowa. On June 20, 1984, a medical report was sent to the court indicating that Brian F. was the father of M.B.

On June 25, 1984, an "Amended Supplemental Juvenile Court Petition" was filed. This petition alleged that "the natural father of [M.B.] is unknown to the petitioner," the county attorney of Stanton County, and sought the termination of the parental rights of the "unknown father" because of abandonment of the minor child, and again sought termination of the parental rights of Debora P. and James P.

The hearing on termination of parental rights was conducted on June 25, 26, 27, 28, and 29, 1984. All parties were present with counsel including "[t]he admitted biological father" of M.B., Brian F. At the beginning of the hearing, the court found Brian F. to be the father of M.B. There was no contrary evidence in that regard. The hearing resulted in 765 pages of testimony as well as 25 exhibits. On June 29, 1984, the court entered its orders terminating the parental rights of Debora P., James P., and Brian F. Debora P. and Brian F. appealed to the district court, where the orders of the juvenile court were affirmed, and to this court.

With regard to the sufficiency of the evidence to support the termination of the parental rights of Debora P., the record shows the following.

When M.B. was born in 1976, Debora P. was 16 years old and Brian F., 17. The first contact that Debora P. had with Nebraska public authorities, insofar as shown by the record, was on November 13, 1980, when Debora P.'s case was reviewed by the Lancaster County Child Protective Services. At that time Debora P. had just moved from Sioux City, Iowa, to Lincoln, Nebraska, where her husband, James P., had been incarcerated in the Nebraska prison system. In Sioux City, Debora P. and the children had been under the supervision of the Iowa authorities for abuse and neglect of the children. The Lancaster County C.P.S. became involved with Debora P. regarding parenting skills. At this time J.P. was under the care of a Sioux City doctor

for a punctured eardrum. One of the children had a cigarette burn. The Lancaster County report indicated that Brian F. was M.B.'s father, but his name was misspelled in the report and his address in Sioux City, Iowa, was incorrect.

In January of 1981 Debora P. moved to Norfolk, Stanton County, Nebraska, with the children. There, an employee of the Department first met with Debora P. and the children on January 21, 1981, to investigate a report of possible child abuse and neglect. On this occasion Debora P.'s home was filthy, containing dog feces everywhere (some dried and some fresh), and unfit for proper care of the children. A homemaker was assigned to aid Debora P., but the homemaker had difficulty in contacting Debora P. on several occasions. In July 1981 the same employee of the Department again visited Debora P.'s home and found the same filthy conditions. The same filthy conditions were found to exist in August and September of 1981. As stated above, a juvenile court petition was filed September 16, 1981. The children were removed from Debora P.'s custody after she placed the children in the care of a couple who had had their parental rights to their own children terminated on two occasions. At this time Debora P. had had 14 different legally documented residences (in addition to "numerous undocumented moves") in the time from October of 1976 to October of 1981, in 8 different cities. Between October of 1981 and the hearing in June 1984, Debora P. had 12 different residences (including 4 separate times when she was a "transient" in Sioux City, Iowa). During much of the time, Debora P. was an assistant over-the-road truckdriver in the company of a man who had had four earlier sex-based convictions, including the molestation of children. The man was called "daddy" by M.B. when the child was visited by Debora P.

The testimony adduced at the 5-day, June 1984 hearing established beyond any doubt that prior to the children's being placed in a foster home, the home furnished for them by Debora P. was unsanitary, unhealthy, and totally unsatisfactory as a home in which children should be raised. After the children were placed in a foster home, the evidence shows that Debora P. was constantly given the opportunity to rehabilitate herself and

prepare to furnish her children a proper home. Over a period of 3 years, Debora P. either was unable to, or unwilling to, so conduct herself as to provide a proper home for her children. We affirm the findings of the juvenile court that the best interests of the three children require that the parental rights of Debora P. be terminated as to those children. We find that Debora P. has substantially and repeatedly neglected those children and has refused to give these juvenile children necessary parental care and protection. Neb. Rev. Stat. § 43-292(2) (Reissue 1984). We also find that the three children are as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1984) and that reasonable efforts, under the direction of the juvenile court, have failed to correct the conditions leading to the determination that M.B., J.P., and R.P. are such children. § 43-292(6).

With regard to Brian F. the record reflects the following. Between the birth of M.B. on October 4, 1976, and the time when her mother married James P. in 1977, there were a few contacts between Brian F. and M.B. These few contacts were initiated by Debora P. and generally would occur when she would take M.B. to the place where Brian F. worked. The next contact between M.B. and Brian F. was in August of 1979. Between August 1979 and June 1984, a total of eight contacts occurred between the two. There was no contact between M.B. and Brian F. from October 1980 to October 1983. All contacts between M.B. and Brian F. were also initiated by Debora P. Brian F. did not support M.B. in any way nor help with the expenses of her birth. There is no evidence that he accepted any parental responsibility. Brian F. admitted that he requested that Debora P. not inform the authorities of his paternity to avoid paying child support. The original petition was filed on September 16, 1981, and the last contact Brian F. made with M.B. prior to that time was in October 1980.

The evidence indicates that during the first 8 years of the life of M.B., Brian F. did not in any way acknowledge paternity until the initiation of these proceedings. He did not initiate contacts with her, did not keep in any communication with her, and did not help to financially support her. Only at the time of these termination proceedings did he claim that he was the

father of M.B., and that claim was made only after he requested a blood test to determine if M.B. was his natural daughter.

The evidence is clear that before the filing of the juvenile court proceeding of September 16, 1981, Brian F. had abandoned M.B. for a period of more than 6 months—one of the specific conditions of termination of parental rights set out in § 43-292(1). Other evidence shows that although Brian F. and his wife, who were married in 1979, were successfully caring for their own child and the two children of his wife from before the marriage, the best interests of M.B. would not be served by injecting her into that new family in 1984.

Brian F.'s challenge to the sufficiency of the evidence to terminate his parental rights with regard to M.B. is without merit. The petition involved herein alleged that the unknown natural father of M.B. had abandoned her. The burden of proof to establish parental abandonment of a child is that of clear and convincing evidence. *In re Adoption of Simonton*, 211 Neb. 777, 320 N.W.2d 449 (1982). The evidence in this case is clear and convincing in all respects, and the lower court was correct. As we stated in *Simonton, supra* at 783-84, 320 N.W.2d at 454:

> Where there has been a protracted period of totally unjustified failure to exercise parental functions, an isolated contact or expression of interest does not necessarily negate the inference that a person no longer wishes to act in the role of parent to a child. [Citation omitted.] The parental obligation is a positive duty which encompasses more than a financial obligation. It requires continuing interest in the child and a genuine effort to maintain communication and association with that child. Abandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child. [Citation omitted.]

The second error assigned by Brian F. raises equal protection and due process issues regarding the failure of the court to offer him a rehabilitation plan and in the failure to give him notice at an earlier time. In dealing with the issue of a rehabilitation plan, we note that the State is not required to "provide an opportunity of rehabilitation before terminating parental

rights, although the court may choose to do so." *In re Interest of M. W.M.*, 221 Neb. 829, 834, 381 N.W.2d 134, 138 (1986). There is no right to an opportunity for rehabilitation prior to termination of parental rights, but when such an opportunity is granted, the party must comply with the plan and satisfactorily complete it. There was no due process violation in this regard.

Brian F.'s equal protection claim is based upon the fact that Debora P., the natural mother, was provided an opportunity for rehabilitation while Brian F. was not. It is clear, however, that Debora P. and Brian F. were not similarly situated. See *Shoecraft v. Catholic Social Servs. Bureau, ante* p. 574, 385 N.W.2d 448 (1986). Brian F. had abandoned M.B. by the time he was asserting some interest in M.B., while Debora P. had made some attempt to fulfill her parental responsibilities from the birth of M.B.

Brian F. asserts that he had not abandoned M.B. because he did not receive notice of the juvenile court proceedings. However, Brian F. was not entitled to notice until he is found to be the father. One who has not established paternity by either court proceedings or behavior has no right to notice of termination proceedings. See *Stratman v. Hagen*, 221 Neb. 157, 376 N.W.2d 3 (1985). The amended supplemental petition sought termination of the parental rights of the natural father, who was unknown to petitioner. Brian F. was not established as the father at that time and had no right to notice.

The record shows, in any event, that when Brian F. appeared before the court, he was granted a continuance of the hearing and an attorney was appointed to represent him. Brian F. and his attorney took an active part in the 5-day trial. Brian F. requested no further continuance. Brian F. was not entitled to notice under this record and, in any event, was afforded due process by the juvenile court which more than adequately protected all his rights.

As stated above, the claim that Brian F. is entitled to an opportunity to rehabilitate because in other cases such an opportunity was afforded is erroneous. Brian F. fails to make out an equal protection claim, in that he had previously abandoned M.B. Brian F. was not established, in any manner, to be the father of M.B. until the lower court so declared on the

first day of the trial. Brian F. did not by his actions establish paternity as did the putative father in *In re Interest of Witherspoon,* 208 Neb. 755, 305 N.W.2d 644 (1981). Brian F. did not act in any way as M.B.'s father. See Neb. Rev. Stat. § 13-109 (Reissue 1983). See, also, *Shoecraft, supra.*

Brian F.'s third assignment of error is that the trial court used an incorrect standard when deciding the case based upon the best interests of the child rather than considering the rule that parental rights are terminated as a last resort when no reasonable alternative exists. The correct standard is that of the best interests of the child. A recent decision reiterated this long-standing rule that the burden of proof to establish parental abandonment of a child is that of clear and convincing evidence. *In re Interest of P.F., ante* p. 44, 381 N.W.2d 921 (1986). This standard means that the ultimate decision of the court, after sufficient evidence has been presented, must be rendered in the best interests of the child. We expressly reaffirm this standard, which is set out in § 43-292. Parental rights are subject to the paramount interest of society in protecting the rights of a child. *Linn v. Linn,* 205 Neb. 218, 286 N.W.2d 765 (1980). This standard is accompanied by the requirement of the factors set out in § 43-292. It is a combination of the best interests of the child and evidence of fault or neglect on the part of the parents that is required.

We conclude that there was sufficient evidence to support the decision of the trial court to terminate the parental rights of Debora P. and Brian F. to the children involved herein. The court used less restrictive alternatives long enough in regard to Debora P. "A child must not be made to await uncertain parental maturity." *In re Interest of V.B. and Z.B.,* 220 Neb. 369, 374, 370 N.W.2d 119, 123 (1985). The best interests of the children are our main concern, and those interests require a final disposition when rehabilitation has been ineffective and the prognosis is poor regarding both the purposes of rehabilitation and the conditions of neglect and dependency. *In re Interest of S.W.,* 220 Neb. 734, 371 N.W.2d 726 (1985). A child's future is too important to allow us to leave him or her suspended in foster care.

The decisions of the district court, affirming the judgments

of the juvenile court, were correct and are affirmed.

AFFIRMED.