IN RE INTEREST OF J.B. ET AL., CHILDREN UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. B.W. AND S.W., APPELLANTS.

455 N.W.2d 817

Filed June 1, 1990.   No. 89-157.

Mariclare Thomas, of Oglesby, Brown, Thomas, Peterson & Orton, for appellant B.W.

Paul M. Conley for appellant S.W.

James A. Elworth, Deputy Lancaster County Attorney, for appellee.

Larry D. Ohs, guardian ad litem.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Relying upon an insufficiency of evidence argument, B.W., the natural mother of six children, and S.W., the natural father of two of the children, appeal the termination of their parental rights.

We affirm the termination of appellants' parental rights by the separate juvenile court of Lancaster County.

The juvenile court also terminated the parental rights of the natural father of the remaining four children. He has not appealed.

After various hearings on petitions filed by the State between July 7, 1987, and November 30, 1988, the juvenile court obtained jurisdiction over all of the appellants' children pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988). The

court adjudged that the children lacked proper parental care by reason of the fault or habits of their parents. Appellants, B.W. and S.W., did not appeal the adjudications in regard to J.B., R.B., C.B., J.M.B., and S.L.W., and the adjudications became final.

Although appellants set out three separate assignments of error, they collectively assert that there was insufficient evidence for the juvenile court to conclude by clear and convincing evidence that their parental rights should be terminated pursuant to Neb. Rev. Stat. § 43-292 (Reissue 1988).

> "In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires it to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another."

*In re Interest of C.P., ante* p. 276, 277, 455 N.W.2d 138, 140 (1990) (quoting *In re Interest of M.M., C.M., and D.M.,* 234 Neb. 839, 452 N.W.2d 753 (1990)).

In order to terminate parental rights, it must be shown that termination of parental rights is in the child's best interests and that at least one of six bases provided in § 43-292 exists. *In re Interest of C.P., supra.* Section 43-292 provides, in part:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
> (2) The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection;
>
> . . . .
> (4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or

repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile;

. . . or

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination.

An order terminating parental rights must be based on clear and convincing evidence. *In re Interest of C.P., supra.*

The right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child. *In re Interest of M.,* 215 Neb. 383, 338 N.W.2d 764 (1983). A parent's natural right to the custody of his or her own child must yield when the two requirements of § 43-292 have been met. *In re Interest of J.S., A.C., and C.S.,* [227 Neb. 251, 417 N.W.2d 147 (1987)]. First, there must be clear and convincing evidence of the existence of one or more of the circumstances described in subsections (1) to (6) of § 43-292. *Id.* Second, if one of the conditions prescribed in subsections (1) to (6) has been evidentially established, there must be an additional showing by clear and convincing evidence that termination of parental rights is in a child's best interests. *Id.* "It is a combination of the best interests of the child and evidence of fault or neglect on the part of the parents that is required." *In re Interest of M.B., R.P., and J.P.,* 222 Neb. 757, 766, 386 N.W.2d 877, 883 (1986).

*In re Interest of C.P., supra* at 284-85, 455 N.W.2d at 144.

Based on a de novo review of the record and giving weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another, the record reflects the following. On or about March 29, 1987, appellant S.W. subjected J.B. to sexual contact and struck him with a leather belt. In addition, J.B., R.B., C.B., and J.M.B. had been left alone by appellants for long periods of time. The juvenile court ordered that temporary custody of the children be placed in the

Nebraska Department of Social Services. On July 7, 1987, the juvenile court found that it had jurisdiction over J.B., R.B., C.B., and J.M.B. under § 43-247(3)(a). On February 16, 1988, the court found it also had jurisdiction over 3-month-old S.L.W., under § 43-247(3)(a).

On July 16, 1987, the juvenile court ordered an evaluation of appellant S.W. by the Child Guidance Center. B.W. was given maximum visitation with the children. S.W. was allowed supervised visits with R.B., C.B., and J.M.B. only.

Subject to specific conditions and a plan of rehabilitation, the court returned the children to the physical custody of B.W. on November 19, 1987, with legal custody being retained in the Department of Social Services. The court ordered S.W. not to be on the property of B.W. or to have unsupervised contact with the children. Both appellants were ordered to be involved in parenting classes and to provide caseworkers access to the home at any time, and S.W. was to undergo a psychological assessment.

At a review hearing, the court found that the November 19, 1987, order had been violated. S.W. was found at the home on one occasion, and on at least that occasion, he had unsupervised contact with at least one of the children. B.W. allowed such activity to occur and lied to police officers who were looking for S.W., telling them he was not in the home. S.W. also failed to give Child Protective Services access to the home. The court reiterated its earlier order and further ordered B.W. to go to the Child Guidance Center for counseling.

After a hearing on the guardian ad litem's motion for emergency placement of the children outside the appellants' home, the court found that S.W. had again had sexual contact with J.B. The court ordered that the children remain out of the family home. The court also cited from an evaluation performed on S.W. that indicated S.W. and B.W. had little motivation to seek treatment for their sexual and family troubles. The evaluation noted that individual and family counseling would not be worthwhile or effective, as both appellants denied any problems, sexual or otherwise, with their family. The doctor stated such denial was indicative of people who have a sexual interest in children. The evaluator

concluded: "Any decision to reunite father with the family should be seriously and conservatively considered . . . ." The court found it would not be in the best interests of the children to return them to B.W.

About June 22, 1988, B.W. had inappropriate sexual contact with her son J.B. Also, in June 1988, appellants exchanged graphic letters in which they planned future sexual assaults on children, including J.B. and another son, R.B. B.W. also had inappropriate sexual contact with two of her nephews. B.W. was convicted of first degree sexual assault on a child, sexual assault on a child, and incest.

On November 30, 1988, the State filed a petition in the interest of newly born J.W. After a hearing, the juvenile court found that it had jurisdiction over J.W. under § 43-247(3)(a). The appellants have not assigned that finding as error. The petition also prayed that appellants' parental rights to J.W. be terminated.

On January 17, 1989, the State filed petitions to terminate the parental rights of the appellants' five other children. The State alleged that appellants had failed to correct their neglect of the children which had previously been found to exist; that B.W. had sexual contact with children and had molested her son J.B. at the direction of S.W.; and that the appellants had exchanged letters planning sexual assaults on children, including their own.

At the termination hearing, B.W.'s young nephews testified they had sex with B.W. over an extended period of time. One of the sexual incidents was described in a letter written by B.W. to S.W. Two caseworkers testified that despite opportunities for appellants to comply with the court-ordered parental training and counseling, the appellants made no effort to begin the programs. The juvenile court terminated the appellants' parental rights to all of the children in its order filed February 1, 1989.

Having conducted a de novo review of the record, we conclude that there is clear and convincing evidence that appellants' parental rights should be terminated pursuant to § 43-292(2), (4), and (6). A detailed court-ordered plan of rehabilitation was set out by the juvenile court, but appellants

repeatedly violated the orders of the court. They did not correct the conditions of neglect and abuse. Two critical requirements of the juvenile court rehabilitation plan were that the appellants complete a parental training program and go to counseling. Despite numerous opportunities to comply with these requirements, the record reflects that neither appellant made an effort to begin either program. The parents failed to rehabilitate themselves. A parent's failure to make reasonable efforts to comply with a court-ordered plan of rehabilitation designed to reunite the parent with the child presents an independent reason justifying termination of parental rights. *In re Interest of J.H. et al.*, 233 Neb. 338, 445 N.W.2d 599 (1989).

Appellants' repeated neglect of their children and their failure to correct the conditions that led to the findings of neglect; their failure to comply with the court-ordered plan of rehabilitation; and their actual and anticipated sexual assaults on children, including some of the children involved here, constitute clear and convincing evidence that the termination of appellants' parental rights is in the best interests of all the children.

AFFIRMED.