IN RE INTEREST OF A.H., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. N.H., APPELLANT.
467 N.W.2d 682

Filed April 5, 1991. No. 90-596.

Kathryn L. Mesner, of Mesner & Mesner, for appellant.

Dale M. Shotkoski, Merrick County Attorney, for appellee.

Steven M. Curry, of Sampson, Curry & Hummel, guardian ad litem.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

### STANDARD OF REVIEW

"In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. [Citations omitted.] In the absence of any reasonable alternative and as the last resort to dispose of an action brought pursuant to the Nebraska Juvenile Code . . . termination of parental rights is permissible when the basis for such termination is proved by clear and convincing evidence. [Citations omitted.] A juvenile's best interests are one of the primary considerations in determining whether parental rights

should be terminated as authorized by the Nebraska Juvenile Code."

*In re Interest of C.A.*, 235 Neb. 893, 894-95, 457 N.W.2d 822, 824 (1990). Accord, *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990); *In re Interest of T.C.*, 226 Neb. 116, 409 N.W.2d 607 (1987). See, also, Neb. Rev. Stat. § 25-2728(4) (Reissue 1989) (direct appeal to Supreme Court from a judgment of a county court sitting as a juvenile court).

## ASSIGNMENTS OF ERROR

N.H. contends that the court erred (1) by improperly admitting documentary evidence regarding N.H.'s "lifestyle and parenting problems that took place in a different state as much as eight years prior to the birth of the juvenile named in this case," (2) by concluding that there was clear and convincing evidence of her parental unfitness as a basis to terminate her parental rights in her daughter, A.H., and (3) by determining that the termination of N.H.'s parental rights was in A.H.'s best interests.

## PROCEEDINGS IN THE JUVENILE COURT

*Adjudication Hearing.*

In accordance with the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 et seq. (Reissue 1988), the county court for Merrick County, sitting as a juvenile court on December 5, 1988, conducted an adjudication hearing attended by A.H.'s biological mother, N.H.; the mother's lawyer; the guardian ad litem for A.H.; and the county attorney of Merrick County. On that date, the court determined that A.H. was a juvenile within § 43-247(3)(a) (a child whose parent neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile) and, subsequently, placed A.H. in the temporary custody of the Department of Social Services (DSS).

*Rehabilitation Plans.*

Although the record fails to disclose any court-ordered rehabilitation plan, from January 9 to September 22, 1989, N.H. and DSS entered into three separate written rehabilitation "agreements," whereby N.H. agreed, among other things, to

participate in a program of inpatient treatment for drug and alcohol abuse, find employment and housing, live without roommates unless approved by DSS, and visit A.H. DSS agreed to assist N.H. and monitor her progress toward the goal of reuniting the mother and child.

*Petition to Terminate Parental Rights.*

After interim review hearings concerning the relationship between A.H. and her mother, the county attorney, on February 14, 1990, petitioned for termination of N.H.'s parental rights in A.H. and alleged that N.H. substantially and repeatedly neglected the child, refused to supply necessary parental care and protection for the child, habitually consumed liquor, and pursued a life which was seriously detrimental to A.H.'s health and well-being. See § 43-292(4). Also, the county attorney alleged that "reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination" that A.H. was a child within the jurisdiction of a juvenile court under the Nebraska Juvenile Code. See § 43-292(6).

*Basis for Termination of Parental Rights.*

As mentioned above under the heading "Rehabilitation Plans," there were agreements between N.H. and DSS concerning the manner in which N.H. would conduct her life. Under § 43-292(6), a ground to terminate parental rights exists when "reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination" and adjudication that a child is a juvenile under the Nebraska Juvenile Code and, therefore, is within the jurisdiction of a juvenile court. The record reflects no court order containing a plan for N.H.'s rehabilitation. As we very specifically and clearly stated in reference to § 43-292(6) as a basis to terminate parental rights: "A juvenile court has the discretionary power to prescribe a reasonable plan for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code." *In re Interest of L.H.*, 227 Neb. 857, 863, 420 N.W.2d 318, 321 (1988). Accord, *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990); *In re Interest of T.C.*, 226

Neb. 116, 409 N.W.2d 607 (1987). Also, in express reference to § 43-292(6), we have recognized that "when a parent fails to make reasonable efforts to comply with a court-ordered rehabilitative plan, the parent's failure presents an independent reason justifying termination of parental rights." *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 266, 417 N.W.2d 147, 158 (1987). Accord, *In re Interest of J.L.M. et al., supra*; *In re Interest of L.H., supra*. Consequently, within § 43-292(6), "reasonable efforts, under the direction of the court" means efforts in relation to a court-ordered plan for parental rehabilitation, not an extrajudicial agreement between a parent and an administrative agency regarding the parent's lifestyle. Presently, we need not elaborate on legal implications and problems inherent in leaving rehabilitation plans to the dictates of an administrative agency rather than the judicial direction contemplated by § 43-292(6). Inasmuch as it is unclear that the trial court in N.H.'s case utilized parental noncompliance with the N.H.-DSS agreements as a basis to terminate N.H.'s parental rights, we do not consider those extrajudicial agreements in our de novo review for disposition of N.H.'s appeal. However, we again emphasize through repetition: A rehabilitation plan, within the purview of § 43-292(6), is a court-ordered plan, that is, a judicially fashioned and determined plan, for parental rehabilitation. Also, in *In re Interest of J.S., A.C., and C.S., supra*, we prescribed a procedure, including an evidential hearing, precedent to a plan for parental rehabilitation and then pointed out the necessity for careful thought reflected in a rehabilitation plan in view of the serious consequences from a parent's willful noncompliance with the plan. "Serious consequences" is an understatement, since noncompliance with a rehabilitation plan may lead to termination of parental rights in a child. We encourage courts and counsel to review *In re Interest of J.S., A.C., and C.S.* regarding plans for parental rehabilitation. Implicit in the foregoing is the assumption that *In re Interest of J.S., A.C., and C.S.* has previously been viewed, which we hope is not an unjustified assumption.

Nevertheless, a plan for rehabilitation is not a prerequisite or condition precedent to termination of parental rights. *In re*

*Interest of M.B., R.P., and J.P.,* 222 Neb. 757, 386 N.W.2d 877 (1986); *In re Interest of M. W.M.,* 221 Neb. 829, 381 N.W.2d 134 (1986).

In April 1990, at a hearing attended by all interested parties, their counsel, the guardian ad litem, and a DSS representative, the court received information concerning the State's petition to terminate N.H.'s parental rights in A.H.

At that hearing and over N.H.'s objections (relevancy, hearsay, and denial of cross-examination), the State introduced written reports from the Illinois Department of Children and Family Services on the investigation of N.H.'s lifestyle in Illinois from 1972 to the early 1980's and also introduced files from an Illinois court regarding N.H.'s involvement in events which occurred years before A.H.'s birth.

In *In re Interest of J.S., A.C., and C.S., supra* at 262-63, 417 N.W.2d at 155, we stated: "Regarding adduction of evidence at a dispositional hearing, we have consistently held that the Nebraska Evidence Rules do not apply at a dispositional hearing, including an action to terminate parental rights, under the Nebraska Juvenile Code." However, in *In re Interest of J.S., A.C., and C.S.,* this court recognized and considered constitutional aspects of evidence in a hearing to terminate parental rights and concluded:

> [W]hile the Nebraska Evidence Rules, §§ 27-101 to 27-1103, are not applicable in a dispositional hearing, including a hearing to terminate parental rights, the requirements of due process control a proceeding to terminate parental rights and the type of evidence which may be used by the State in an attempt to prove that parental rights should be terminated. See, Neb. Const. art. I, § 3; U.S. Const. amend. XIV.
>
> . . . .
>
> The trial court's consideration of improper evidence does not, by itself, require reversal of a judgment terminating parental rights under the Nebraska Juvenile Code. Because factual questions concerning a judgment or order terminating parental rights are tried by the Supreme Court de novo on the record, impermissible or improper evidence is not considered by the Supreme

Court. [Citations omitted.] In an appeal from a judgment or order terminating parental rights, the Supreme Court, in a trial de novo on the record and disregarding impermissible or improper evidence, determines whether there is clear and convincing evidence to justify termination of parental rights under the Nebraska Juvenile Code.

*In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 265-66, 417 N.W.2d 147, 157 (1987). See, also, *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990).

Consequently, in deciding *In re Interest of J.S., A.C., and C.S., supra*, this court expressly refused to consider a DSS report, not because the report was hearsay, but because the report

effectively eliminated P.L.'s right to cross-examination regarding the contents of the departmental written report, which included prejudicial information embodied in entries by unidentified persons and which covered events outside the personal knowledge of any witness at the termination hearing. In proceedings to terminate parental rights under the Nebraska Juvenile Code, a parent has the due process right to cross-examine an adverse witness.

227 Neb. at 265, 417 N.W.2d at 157.

Thus, while the trial court's reception of the documentary evidence in N.H.'s case is questionable, in our de novo review we disregard that documentary evidence which N.H. sought to exclude.

N.H. was 39 years old and unmarried at the time of the hearing to terminate her rights in A.H., who was born on May 25, 1988. A.H.'s biological father is not a party to the proceedings underlying this appeal. In July 1988, N.H., with her 15-year-old daughter, B.J.B., and A.H., moved into an apartment with two adult males. N.H. slept with one male, while B.J.B. slept with the other. Neither N.H. nor B.J.B. was employed; hence, the only income for the family was Social Security payments. N.H. used most of the Social Security payments to buy clothes, shoes, and tapes for her two male roommates and to frequently patronize bars. Since N.H. seldom took care of A.H., the child's care was almost

exclusively provided by B.J.B. Virtually every night, N.H. took B.J.B. and 2-month-old A.H. to bars, where N.H. remained until she concluded a night of drinking.

In late July 1988, N.H. went to the Hall County jail to visit an inmate and left A.H. unattended in an automobile parked near the jail. One evening in August 1988, N.H. and one of her boyfriends became intoxicated during a night out and returned to the apartment where A.H. and B.J.B. were staying. According to B.J.B., N.H.'s boyfriend

> got really drunk and I was tryin' to carry him into the house and my mom was laughin', thinkin' it was real funny. He was sittin' there throwin' up and then I finally got him into the house, but not really into the house and he fell and hit his head. I told my mom I was gonna get my sister and take her over to grandma's just for the night . . . [b]ecause I was gettin' sick of my mom getting drunk and always leaving me with my sister, because my sister was not my responsibility. . . . [N.H.] got mad. I went to get [A.H.'s baby] bottles and take them out to the car and [N.H.] locked the door on me so I couldn't get [A.H.] out.

As the result of the preceding episode, B.J.B. went to her grandmother's house, gathered several family members, and returned to retrieve A.H. B.J.B. and several members of her family awakened A.H. and took A.H. to her grandmother's house.

N.H. testified that she had been involved in prostitution, had played alcoholic drinking games with B.J.B., and, on one occasion, had sexual relations with a man in the presence of several people, including B.J.B. Further detail of N.H.'s sexual conduct serves no useful purpose. Although N.H. spent a brief time in treatment for alcohol abuse, she never completed any program to eliminate or lessen her dependency on alcohol and lost employment as a result of her alcoholism.

At the conclusion of the hearing, the court determined that the State, by clear and convincing evidence, had established that N.H. failed in her parental obligations to A.H. as the result of "a general serious lack of responsibility, failure to nurture, alcohol addiction, and sexual habits and proclivities that endanger [A.H.]" Additionally, the court found no indication

that N.H.'s parental problems toward A.H. "will be resolved within a reasonable time in the future." After finding that termination of N.H.'s parental rights in A.H. was in the best interests of the child, the court, pursuant to § 43-292, terminated N.H.'s parental rights in A.H.

## TERMINATION OF N.H.'S PARENTAL RIGHTS

Among the bases for termination of parental rights, § 43-292 includes: "(4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile."

N.H. claims that the State has failed to establish a factually sufficient basis to terminate her parental rights in A.H. N.H. argues that the "State's allegations regarding debauchery and lewd and lascivious behavior were the apparent result of isolated instances in which Appellant exhibited inappropriate sexual behaviors." Brief for appellant at 25. However, the evidence establishes that N.H.'s detrimental activities occurred weekly, if not daily, over an extended period. After a thorough de novo review of the record, we find that the record clearly and convincingly demonstrates that N.H.'s conduct is seriously detrimental to A.H.'s health and well-being, conduct which justifies termination of parental rights pursuant to § 43-292(4). What is painfully clear is the fact that N.H. placed on B.J.B. virtually all responsibility for taking care of A.H. so that N.H. could pursue and satisfy her personal pleasures. As manifested in the present case, adolescence exists for a few years, but immaturity may last a lifetime.

From our de novo review and based on clear and convincing evidence, we conclude, as did the trial court, that the best interests of A.H. require termination of N.H.'s parental rights in A.H. Accordingly, we affirm the trial court's judgment terminating N.H.'s parental rights in A.H.

AFFIRMED.