In re Interest of D.R. and S.B., children
under 18 years of age.
State of Nebraska, appellee, v. D.R. et al.,
appellants.
351 N.W.2d 424

Filed July 13, 1984. No. 83-811.

Donald W. Walters, for appellants.

Gary L. Schacht, Chief Deputy Hall County Attorney, for appellee.

James D. Livingston, guardian ad litem.

Krivosha, C.J., White, and Caporale, JJ., and McCown and Brodkey, JJ., Retired.

White, J.

This is an appeal from the district court for Hall County, Nebraska, affirming the order of the county court which terminated the parental rights of J.B. to S.B. The order also terminated the parental rights of J.B. to D.R. Additionally, the parental rights of the natural father, D.R., to D.R. were terminated. J.B. and D.R. appeal. We affirm, keeping in mind that we review the matter de novo upon the record and that an order terminating parental rights must be supported by clear and convincing evidence. *In re Interest of Hill*, 207 Neb. 233, 298 N.W.2d 143 (1980); *In re Interest of J. and R.*, 216 Neb. 183, 342 N.W.2d 660 (1984).

The evidence discloses that J.B. is the mother of four children, the oldest of whom is not now subject to the juvenile statutes. Legal custody of the second oldest child is in the Hall County Division of Public Welfare and physical custody is in a foster home because the child ran away from home after an incident in which she was the subject of a sexual assault by a brother of the appellant D.R. The brother was convicted and sentenced to a term in the Nebraska Penal and Correctional Complex. Therefore, these two children are not involved in this matter; rather, this action concerns the extended saga of the two younger children, S.B., who was born on February 23, 1972, and D.R., who was born on January 19, 1982.

Appellants, D.R. and J.B., are not married, and D.R. is the natural father of D.R. The whereabouts of the natural father of S.B., to whom J.B. was also not married, are unknown. The older two children were born in wedlock, and J.B. remains legally married to their father. Although the petition which is the subject of this appeal was filed on February 23, 1983, and the order terminating parental rights was entered on April 20, 1983, one or more of J.B.'s children have been the subject of juvenile court action since 1970. The juvenile petition alleges that S.B. and D.R. are minor children who are neglected and lack proper care, and are in a situation injurious to their health, morals, or well-being. Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1982).

Shortly after S.B.'s birth, she was admitted to Lutheran Memorial Hospital in Grand Island, Nebraska, under the diagnosis of failure to thrive. In other words, the child was malnourished, had gained inadequate weight, and was in a life-threatening situation. The child gained weight, and was released on April 17, 1972. Shortly thereafter, S.B. was again admitted to Lutheran Memorial Hospital suffering from the same condition, which, according to the physician's reports, was attributable to a failure to receive adequate nourishment. S.B. was

not returned to her mother's custody until August 1973. The evidence indicates that during this period of time, the services of the Hall County Division of Public Welfare, the department of health, the public health nurses, and the county extension service were utilized in various attempts to train J.B. and, by that time, D.R., who had moved in with J.B., in basic housekeeping skills, cleanliness, diet preparation, personal hygiene, and child care. In June 1974 the appellants moved to North Platte, Nebraska, and the supervision of the case was transferred to the Lincoln County Division of Public Welfare. The situation with respect to the older children's nonattendance at school and the disordered and filthy housekeeping practices continued. Subsequently, in 1978, the parties returned to Hall County, where extended social service activities, including ADC payments and various other state and federal welfare programs, continued. It was during this time that the juvenile activities of the older two children were principally involved.

In February 1983 the petition to secure temporary custody of S.B. and D.R. was filed. The evidence discloses that the rental property occupied by the family was literally filled with garbage, there was clothing 2 to 3 feet deep on the floor of the bathroom, and there was opened and spoiled food throughout the house. The house was heated by electric heaters because the gas had been shut off. Previously, J.B. had been advised by the welfare departments to apply for certain additional welfare aid. She refused to do so. At this time S.B. and D.R. were taken into physical custody. S.B. was small for her age and underweight, but in generally acceptable health. D.R., who was approximately 1 year old, was in good physical health, bearing no signs of abuse. The home was determined to be a fire hazard and showed evidence of a recent fire caused by the trash surrounding the space heaters. The meals were prepared in an electric frying pan and, although

there was refrigeration, the refrigerator was unclean and contained a large amount of spoiled foods and liquids.

Essentially, appellants do not contest that the physical condition of the home, at the time the children were taken from them, was dangerous to the health and well-being of S.B. and D.R., nor do they deny that substantially the same conditions persisted for a period of over 10 years, from the time of the first welfare contacts in 1970. Rather, they point out that the children showed no evidence of physical abuse and that the children were not in bad health when they were taken from them in February 1983.

At the time of the hearing on April 4, 1983, appellants were living in a less expensive rental property, and they introduced photographs showing the condition of the home. The photographs indicate a well-kept home, with good housekeeping standards evident. Both at the time of the hearing and for some time prior thereto, J.B. and D.R. were unemployed. Their sole source of income was ADC and various other welfare benefits, food stamps, etc. While the evidence indicates that D.R. had made extended efforts to obtain work, J.B. had not sought employment because she wished to remain home with her youngest child, D.R. In spite of this the evidence indicates that D.R. did all of the cooking for the family.

The appellee points out, and the evidence supports its contention, that the now clean and neat household of appellants is one of numerous repetitive acts of improvement and then a subsequent decline in household standards until the home becomes unfit and dangerous for adults, much less minor children, to reside in. A caseworker testified that, in spite of their protestations, the only time the appellants would attempt to comply with even the most basic of housekeeping standards, so as not to endanger the health or safety of their children, was after threats of removal were made; then those standards would

be maintained for only a short period of time. This cycle is now into its 13th year.

During the educational and training process of various agencies, the appellants appeared interested, and listened. However, based on psychological studies, there was apparently no interest or incentive to apply those standards on a day-to-day, regular basis. It was the opinion of the caseworker, based on her experience, that if the children, S.B. and D.R., were not removed from the home, supervision must continue on a frequent, regular basis until the children reached maturity. Furthermore, the caseworker testified that the best efforts of the welfare department to train or motivate J.B. and D.R. have been a total and absolute failure.

The county court for Hall County in 1972 terminated the parental rights of J.B. to S.B. On appeal the district court for Hall County reversed. While we recognize that custody of minor children is a fundamental right and that it should not be lightly disturbed, we have also held where there are reasonable grounds to believe that the conditions giving rise to a parent's inability to care for children will continue for a prolonged and indefinite period, the parental rights may be terminated when the action is in the best interests of the minor children. *In re Interest of M.*, 215 Neb. 383, 338 N.W.2d 764 (1983).

D.R. is now slightly over 2 years old. To suggest that the preservation of the parental rights of appellants requires that the welfare department actively supervise and closely watch, and, if necessary, threaten and cajole, in order to ensure that the appellants will provide adequate care so as not to endanger the life or health of their children borders on the preposterous. Appellants have indicated, through the 13-year history of their relationship with the department of public welfare and the juvenile court, that they are either unwilling or unable to, on a sustained basis, provide proper parental care for the minor children. The record discloses that this is

the fourth time that physical custody of S.B. has been removed from J.B. Four times is enough. To further subject D.R., a child of tender years, to such an environment cannot be said to be in the best interests of the child.

Appellants' contention that the county and district courts' orders relied on a statutory provision other than that alleged in the petition is not supported by the record and is therefore without merit.

We find by clear and convincing evidence that the best interests of the minor children, S.B. and D.R., require that the parental rights of J.B. and D.R. be terminated.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority in this case. While I concede that the parents in this case are not likely to be designated "parents of the year," I likewise believe that the evidence does not disclose either physical abuse or conditions eminently harmful to the children, thereby compelling state intervention. I continue to be convinced that "best interests of the children" means within the context of their natural family home and does not imply that children should be removed from their parents if, by doing so, they may move up in life. I would have concluded that the record was insufficient to establish by clear and convincing evidence that the best interests of the minor children require that the parents' parental rights be terminated, and I would have reversed.