IN RE INTEREST OF D.A., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. R.A., APPELLANT.
475 N.W.2d 511

Filed October 11, 1991.    No. 91-162.

Hal W. Anderson, of Berry, Anderson, Creager & Wittstruck, P.C., for appellant.

Mark J. Young, Deputy Hall County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

The county court, sitting as a juvenile court, adjudged D.A., a boy born December 11, 1985, to be within its jurisdiction and placed his temporary custody in the Department of Social Services and his physical possession with his father. The appellant mother, R.A., assigns the district court's affirmance of the juvenile court's adjudication as error, asserting that the district court should have held the evidence insufficient to support the juvenile court's findings. We affirm.

Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) provides, in relevant part, that a juvenile court shall have jurisdiction over one less than 18 years of age who, among other things, "lacks proper parental care by reason of the fault or habits of his or her parent . . . or who is in a situation . . . injurious to the health or

morals of such juvenile . . . ." The State alleged the boy came within the juvenile court's jurisdiction under both of the aforestated statutory grounds.

When the boy's parents were divorced, at a time undisclosed by the record, the boy's care, custody, and control were placed in the mother. The father was granted visitation rights. The State filed the petition giving rise to this action on May 7, 1990, because of its concern that the boy was being harmed by his mother's unfounded belief and excessive concern that the boy was being sexually abused by his father and members of his father's family.

The record reveals that the mother has made a number of sexual abuse complaints concerning the boy to a variety of law enforcement agencies; there is no evidence that any of these complaints have resulted in charges against the father or anyone else. The record also reveals that in an effort to establish her fixation as fact, she has caused the boy to be examined numerous times by a number of physicians. None of these examinations established sexual abuse.

However, a social worker who saw the boy at the mother's request believed that both he and his stepbrother, while visiting the father, were inappropriately touched by the 12-year-old daughter of a babysitter. The social worker was nonetheless of the opinion that the mother's allegations against the father were unfounded and that the mother coached the boy as to what to say about sexual abuse. This witness concluded that the mother's conduct would have a "[t]raumatic impact" on the boy, stating:

> It is in essence victimizing him, forcing him to focus on his sexuality and giving him the damage, what we call the "damaged goods image" in terms of him viewing himself that something must be wrong with him. So they must be wrong with his genitalia. And that his self perception would be that he is damaged. That he cannot trust anyone. That he is being hurt.

The clinical psychologist who saw the boy and mother upon the social worker's referral testified that in his opinion the mother is sufficiently mentally ill as to be unable to help the boy develop healthy relationships with other people, develop a

healthy self-image, and move away from an "enmeshed relationship with her." His examination of the boy revealed that he had a very difficult time with independence and that he was overly inhibited. In terms of his ability to play, this witness found the boy to be developmentally behind where he should be at his age. It was the clinical psychologist's opinion that these problems will continue to grow unless steps are taken to correct them. This witness was also concerned with the boy's interest in sexuality and was of the opinion the boy was having a fairly traumatic reaction to his current situation, but could not say whether that reaction was the result of being separated from his mother and family, of being involved with the system, or of being, when he was temporarily in a child-care facility, in the "chaos of a new environment with lots of children."

The psychologist the mother consulted found her to have a personality disorder which denies her good insight and prevents her from accurately perceiving and describing prior events.

The fact that a juvenile comes within the purview of § 43-247(3)(a) must be established by a preponderance of the evidence. See *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986). From our de novo review of the record, see *In re Interest of M.P.*, 238 Neb. 857, 472 N.W.2d 432 (1991), we are persuaded the evidence preponderates in favor of a finding that irrespective of whether the mother has the ability to act other than she does, the boy would nonetheless, if left in her custody and possession, be in a situation injurious to his mental and physical health.

The evidence in this case calls into question some of the mother's mental abilities. Even where there is no statutory requirement that such be done, it is within the inherent power of courts, and is both proper and desirable, that they appoint a guardian ad litem for a litigant when reasonably convinced the litigant is not mentally competent to comprehend the significance of legal proceedings, the litigant is unable to intelligently and understandingly participate in the protection of her or his best interests, and such a guardian is needed to protect those interests. *Graham v. Graham*, 40 Wash. 2d 64, 240 P.2d 564 (1952). See *In Re Kenison's Guardianship*, 72 S.D. 180, 31 N.W.2d 326 (1948). Since the evidence does not suggest

that the mother was incapable of understanding the significance of the subject proceedings or lacked the ability to intelligently and understandingly participate in the protection of her interests, the juvenile court did not abuse its discretion in failing to appoint a guardian ad litem for her.

The judgment of the district court is affirmed.

AFFIRMED.