IN RE INTEREST OF D.M.B., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. T.B., APPELLANT.
481 N.W.2d 905

Filed March 27, 1992.    No. S-91-329.

350

James J. Regan, of Kelley & Lehan, P.C., for appellant.

James S. Jansen, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

T.B. appeals an order of the separate juvenile court of Douglas County terminating her parental rights to her 3-year-old natural daughter, D.M.B.

Because plain error permeates both the adjudication and the disposition proceedings in this case, we have elected to conduct a de novo review of the entire record under both our review and supervisory powers.

We find the juvenile court committed plain error (1) when it found, after an adjudication hearing, that it had jurisdiction of D.M.B., and (2) when it denied T.B. procedural due process in the adjudication and disposition proceedings. Because of plain error, the orders of the juvenile court entered following the adjudication and the disposition hearings must be vacated, and the case must be dismissed.

None of the plain errors we discuss was assigned as error by T.B. Although an appellate court does not consider assignments of error not listed and discussed in the briefs, it always reserves the right to note plain error which was not complained of at trial or on appeal but is plainly evident from the record, and which is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of G.G. et al.*, 237 Neb. 306, 465 N.W.2d 752 (1991). See, also, *Phelps v. Phelps*, 239 Neb. 618, 477

N.W.2d 552 (1991); *Canas v. Maryland Cas. Co.*, 236 Neb. 164, 459 N.W.2d 533 (1990). Here, we find that a failure to correct the plain errors in this case would result in damage to the integrity, reputation, and fairness of the juvenile justice system.

In view of our findings, T.B.'s first, third, and fourth assignments of error are moot. We will, however, in our supervisory capacity, consider T.B.'s second assignment of error: that the juvenile court erred in ordering a rehabilitation plan which was not reasonable and material to the rehabilitative objective of correcting the conditions on which the earlier adjudication had been obtained.

On appeal of any final order of a juvenile court, an appellate court tries factual questions de novo on the record and is required to reach a conclusion independent of the findings of the trial court, but, when the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. See, *In re Interest of A.C.*, 239 Neb. 734, 478 N.W.2d 1 (1991); *In re Interest of A.H.*, 237 Neb. 797, 467 N.W.2d 682 (1991).

We have held that an adjudication order in a juvenile court is an appealable order, and an appeal, if not made within 30 days after the order's entry, will be dismissed. See, *In re Interest of C. W. et al.*, 238 Neb. 215, 469 N.W.2d 535 (1991); *In re Interest of P.L., S.L., and A.L.*, 236 Neb. 581, 462 N.W.2d 432 (1990). That being true, this court ordinarily does not review the validity of an adjudication order in the absence of a direct appeal. However, this rule does not apply when the facts pleaded and the facts developed at the adjudication hearing are not sufficient for a juvenile court to acquire jurisdiction of a juvenile. If the pleadings and evidence at the adjudication hearing do not justify a juvenile court's acquiring jurisdiction of a child, then the juvenile court has no jurisdiction, i.e., no power, to order a parent to comply with a rehabilitation plan, nor does the juvenile court have any power over the parent or child at the disposition hearing unless jurisdiction is alleged and proven by new facts at a new adjudication-disposition hearing.

In her assignments of error, T.B. has not challenged the juvenile court's acquisition of jurisdiction over D.M.B. The

theory behind our ruling in *Nebraska State Bar Found. v. Lancaster Cty. Bd. of Equal.*, 237 Neb. 1, 465 N.W.2d 111 (1991), is helpful in determining the jurisdictional issue we consider in this case. There, we held, in substance, that whether a question is raised by the parties concerning the jurisdiction of a lower court or tribunal, it is not only within the power but the duty of an appellate court to determine whether such appellate court has jurisdiction over the matter before it. In *Nebraska State Bar Found.*, we also held, in substance, that when lack of jurisdiction in the original tribunal is apparent on the face of the record, yet the parties fail to raise that issue, it is the duty of a reviewing court to raise and determine the issue of jurisdiction sua sponte. When a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, an appellate court also lacks power to adjudicate the merits of the claim. *Id*.

In D.M.B.'s case, the juvenile court's lack of jurisdiction over D.M.B. is apparent on the face of the record. Therefore, this court raises the issue sua sponte. The allegations in the original petition in this case, if proven, without question would have conferred jurisdiction upon the separate juvenile court of Douglas County over D.M.B. The original petition in substance alleged:

## COUNT I

[D.M.B.] was born out of wedlock on March 31, 1987; and said child is now living or to be found in Douglas County, Nebraska.

## COUNT II

[D.M.B.] comes within the meaning of Nebraska Revised Statutes, 1943, Section 43-247 (3a), being under the age of eighteen years, and lacking proper parental care by reason of the faults or habits of [T.B.], natural mother of said child, *in that*:

A. On or about November 8, 1988, said child was fondled about the genital area by [T.B.]

B. On or about November 8, 1988, the three siblings of said child were subjected to fondling of the genitals, oral sex and digital penetration by [T.B.]

C. Said child and her siblings have been subjected to sexual contact by [T.B.] on several other occasions in the

past six months.

    D. [T.B.] has been involved with the Juvenile Court for two years in an effort to resolve poor parenting skills in reference to said child's three siblings; [T.B.] has failed to comply with the Court's recommendations . . . .

(Emphasis supplied.)

The prayer of the petition asked the juvenile court to make such order or orders concerning the care, custody, control, and support of the said child as deemed appropriate in the premises and, further, that the court terminate the parental rights of T.B., the natural mother of said child, in D.M.B.

The transcript reflects that on Friday, November 11, 1988, T.B. was arrested for sexually assaulting D.M.B.'s sisters and that D.M.B., incorrectly identified as "Diana B.," was placed in foster care. A report by the Omaha Police Division explaining T.B.'s arrest and the placement of "Diana B." in foster care was filed with the juvenile court on Monday, November 14. On that date, without stating a factual basis for its boilerplate order other than that a probation officer investigated the nature and circumstances of the events surrounding the juvenile "Diana B." being taken into custody, the court released the juvenile to the custody of the Department of Social Services for placement with a responsible person. The court found that the continuation of the juvenile, "Diana B.," in her home would be contrary to the welfare of such juvenile and that reasonable efforts were made, prior to placement, to prevent or eliminate the need for removal and to make it possible for the juvenile to return to her home. The order continued that "[f]rom the [unspecified] information provided to the Court, the Court finds and orders that further detention or placement of the above-named juvenile(s) [who at the time was 20 months old] is a matter of immediate and urgent necessity for the protection of the above-named juvenile." The court then ordered, "The juvenile(s) shall be returned to the custody of his/her/their parent(s) unless a petition is filed within eight (8) judicial days from today's date [November 14, 1988,] with a request for continued detention."

On November 28, 1988, the eighth judicial day, the Douglas County Attorney's office, using the correct name of D.M.B.,

filed with the juvenile court the original petition heretofore set forth. On the same day, on the basis of the original verified petition and the county attorney's motion, an order was entered continuing temporary placement with the Department of Social Services.

At a temporary detention hearing on November 28, 1988, there was hearsay evidence that T.B. had sexually molested her children, including D.M.B. Without reciting the facts upon which its ruling was based, the juvenile court continued the temporary custody of D.M.B. in the Department of Social Services for placement in foster care pending an adjudication hearing. T.B. was given rights of supervised visitation with D.M.B.

This court takes judicial notice of the record in *In re Interest of L.B., A.B., and A.T.*, 235 Neb. 134, 454 N.W.2d 285 (1990), which shows that on August 27, 1986, D.M.B.'s three siblings were adjudicated to be juveniles within the juvenile court's jurisdiction because on July 14 two of the siblings were found to be in a filthy condition; the residence was in disarray and infested with flies and roaches; there was no food in the refrigerator or cupboards; and there had been Child Protective Services referrals in the past 1 1/2 years regarding T.B., relating to filthy home conditions and improper care of said children. Because T.B. failed to follow the juvenile court's rehabilitation plans, T.B.'s parental rights in D.M.B.'s three siblings were terminated by the juvenile court on April 24, 1989. In that case, allegations of sexual abuse by T.B. of D.M.B.'s three siblings had been dismissed on April 10. From the records that we have in regard to D.M.B.'s siblings, it would appear that the siblings did not reside with T.B. after July 1986. Sexual abuse charges against T.B. in regard to her children were dismissed in criminal court in December 1988.

An adjudication hearing in regard to D.M.B. was not held until July 20, 1989, more than 8 months after the child was taken into "*temporary* detention" and "*temporary* custody." A parent and a child, both being parties, have a right to a speedy adjudication hearing. See Neb. Rev. Stat. § 43-279.01(1)(f) (Reissue 1988). A delay of 8 months between the time a child is "temporarily" taken from the child's parent until the child and

parent are given the evidentiary safeguards of an adjudication hearing cannot be condoned, even when, as here, the parties agreed to repeated continuances. Keeping a child in limbo for 8 months by way of a "temporary" custody order on the basis of hearsay does not instill confidence in the integrity and fairness of our juvenile justice system. To preserve the integrity of the juvenile justice system, a juvenile court judge must control his or her docket to prevent long delays in the processing of juvenile cases. The fact that a parent may be indicted or charged in a criminal court in connection with alleged conduct toward a child is no excuse for prolonged delays of an adjudication hearing. Even though a parent is acquitted of a criminal charge for conduct detrimental to the parent's child, the parent's conduct may still be grounds for a juvenile court to acquire jurisdiction of the juvenile involved. This is because the standard of proof in a criminal case is beyond a reasonable doubt, *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991), while the lesser standard of proof for acquiring jurisdiction of a child in a juvenile case is by a preponderance of the evidence, *In re Interest of D.A.*, 239 Neb. 264, 475 N.W.2d 511 (1991).

On July 20, 1989, without explanation on the record, the original petition was amended to remove any reference to sexual misconduct on the part of T.B. regarding any of her children. As amended, the petition alleged:

### COUNT I

[D.M.B.] was born out of wedlock on March 31, 1987; and said child is now living or to be found in Douglas County, Nebraska.

### COUNT II

[D.M.B.] comes within the meaning of Nebraska Revised Statutes, 1943, Section 43-247(3a), being under the age of eighteen years, and lacking proper parental care by reason of the faults or habits of [T.B.], natural mother of said child, *in that*:

. . . .

. . . [T.B.] has been involved with the Juvenile Court for two years in an effort to resolve poor parenting skills in reference to said child's three siblings; [T.B.] has failed to comply with the Court's recommendations, resulting in

the termination of her parental rights of those siblings. (Emphasis supplied.)

Upon request of a deputy county attorney, that portion of the prayer requesting termination of T.B.'s parental rights in D.M.B. was dismissed from the original petition.

As relevant here, Neb. Rev. Stat. § 43-247 (Reissue 1988) provides: "The juvenile court . . . shall have jurisdiction of . . . (3) Any juvenile (a) . . . who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian . . . ."

A "juvenile" means any person under the age of 18. Neb. Rev. Stat. § 43-245 (Reissue 1988).

It is noted that the amended petition does not allege that T.B. had exhibited poor parenting skills in regard to D.M.B. T.B.'s poor parenting skills are alleged only with respect to D.M.B.'s three siblings, in that T.B. had failed to comply with the juvenile court's recommendations in regard to D.M.B.'s three siblings, which resulted in the termination of T.B.'s parental rights in D.M.B.'s siblings.

There is no allegation in the amended petition that T.B.'s poor parenting skills in reference to D.M.B.'s three siblings had a detrimental effect upon D.M.B. or that T.B.'s poor parenting skills adversely affected D.M.B. As amended, the petition does not even allege that T.B.'s poor parenting skills placed D.M.B. at risk or that D.M.B. was in a situation dangerous to life or limb or injurious to her health or morals, as provided in § 43-247(3)(a). It is to be remembered that D.M.B. was not even born when, on August 11, 1986, the juvenile court took jurisdiction of D.M.B.'s siblings and ordered them removed from T.B.'s home. The State has not directed our attention to, nor have we found, anything in the record that reflects, from the time of D.M.B.'s birth on March 31, 1987, until November 11, 1988, when D.M.B. was taken into custody by law enforcement officers, that D.M.B. was in a filthy condition; that she was living in a residence that was in disarray, infested with flies and roaches, and without food in the refrigerator or cupboards; or that she was receiving improper care from T.B. These conditions comprised the factual basis upon which D.M.B.'s siblings were removed from T.B.'s home

and found to be within the jurisdiction of the juvenile court. The record discloses that juvenile probation officers and a social service worker visited T.B.'s home on occasion from the time D.M.B. was taken into custody until T.B.'s rights to D.M.B. were terminated by the court. We fail to find that any of those visitors complained about any unsanitary conditions in T.B.'s living quarters.

At the July 20, 1989, adjudication hearing, T.B., with her counsel present, admitted the allegations in the amended petition in D.M.B.'s case. The court then inquired of the deputy county attorney, "Now, it's the Court's understanding, although, you're dismissing the prayer to terminate parental rights between mother and child here, that this would not preclude the State at some future date to filing a motion to terminate?" The deputy county attorney replied, "No, it would not, based on other allegations."

THE COURT: Failing to comply with the orders of the Court?

[Deputy county attorney]: That's correct. I will not refile it on the basis contained in the petition.

THE COURT: Well, I don't think there's a need in view of this plea to go into a factual explanation *because this Court is well aware of the previous dealings at the other docket involving the three siblings, and I think it would be rather repetitious to recite.*

[T.B.'s counsel]: We would waive that and specifically state the Court just went through the entire file in your office.

THE COURT: With counsel.

[T.B.'s counsel]: Yes, with counsel and the Guardian ad litem.

(Emphasis supplied.)

There is no indication in the record that T.B. was present in chambers when the juvenile court judge apparently made some kind of factual determination which resulted in the juvenile court purportedly acquiring jurisdiction of D.M.B. in this case. Nor does the record reflect that T.B. was ever informed of the facts from the "other docket" upon which the juvenile court, at least partially, purportedly acquired jurisdiction over D.M.B.

Juvenile court judges are reminded that juvenile courts are courts of record and that a verbatim record of all proceedings is required. See *In re Interest of R.A.*, 226 Neb. 160, 410 N.W.2d 110 (1987), *overruled on other grounds, In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987). We have also held:

> [A]fter an adjudication under § 43-247(3)(a) of the Nebraska Juvenile Code and before entering an order containing a rehabilitative plan for a parent, a juvenile court shall inform the juvenile's parent that the court may order a rehabilitative plan and thereafter shall hold an evidential hearing *to determine reasonable provisions material to the parental plan's rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained. . . .* The record of proceedings before a juvenile court shall contain the evidence presented at the dispositional hearing held for the purpose of the parental rehabilitative plan. *The juvenile court's specific findings of facts supporting the provisions contained in the parental rehabilitative plan shall be stated in the record.*

(Emphasis supplied.) *In re Interest of J.S., A.C., and C.S.*, 227 Neb. at 272-73, 417 N.W.2d at 161. Accord *In re Interest of L.P. and R.P., ante* p. 112, 480 N.W.2d 421 (1992). We have also held, "Without an adequate record reflecting the parental shortcomings or the parental conduct to be corrected, eliminated, or ameliorated through a rehabilitative plan, it is virtually impossible for this court to evaluate the efficacy of a rehabilitative plan . . . ." *In re Interest of J.S., A.C. and C.S.*, 227 Neb. at 272, 417 N.W.2d at 161. Accord *In re Interest of L.P. and R.P., supra.* Not only did the juvenile court fail at the adjudication hearing to recite the factual basis for assuming jurisdiction of D.M.B., it later failed to find facts to support the rehabilitative steps it ordered. Each failure constitutes plain error that results in damage to the integrity, reputation, and fairness of the judicial process. It is to be remembered that termination of T.B.'s parental rights to D.M.B.'s siblings was because of unsanitary conditions in the home, not for any sexual abuse of her children.

T.B. was never personally given the opportunity to challenge the factual basis upon which the juvenile court claimed to acquire jurisdiction. She was never addressed personally as to whether she waived recitation by the judge of the factual basis upon which the court purportedly acquired jurisdiction of her child. Counsel cannot waive rights which are personal to their clients. Personal rights of a litigant must be waived by the litigant personally. See *State v. Red Kettle*, 239 Neb. 317, 476 N.W.2d 220 (1991). Yet, the juvenile court judge permitted T.B.'s counsel to waive T.B.'s personal right to hear the factual basis upon which the juvenile court acquired jurisdiction of D.M.B. The manner in which a factual basis for acquiring jurisdiction of D.M.B. was determined, the judge's given reasons for not reciting that factual basis, and the judge's statement "I don't think there's a need . . . to go into a factual explanation" discouraged any inquiry or challenge by T.B. to the factual basis, if any, upon which the court assumed jurisdiction in this case. The way in which a purported factual basis was established, if one in fact was established, denied T.B. a fair adjudication hearing and procedural due process. This was plain error.

On the basis of the record before us, neither the State's petition as amended, nor the facts in the amended petition admitted by T.B., support an adjudication that D.M.B. was a juvenile covered by the provisions of § 43-247(3)(a). The juvenile court judge seemed to recognize that in a proceeding subsequent to the adjudication hearing.

At a hearing on March 7, 1990, which was held to review whether T.B. was complying with a court-ordered rehabilitation plan, the juvenile court judge expressed concern about T.B.'s not having addressed "sexual abuse issues."

THE COURT: . . . And that's why we're here.

[T.B.'s counsel]: No, we're not, Your Honor.

. . . .

THE COURT: Well, these are allegations set forth in the petition.

[T.B.'s counsel]: They were dismissed.

THE COURT: If they're dismissed, what are we doing? Must have been some part of them found to be true.

[T.B.'s counsel]: That's inaccurate. That part of the petition — those allegations were also dismissed as part of the petition on the other three children.

THE COURT: If the petition was dismissed, will someone tell me why we're here today?

After a discussion of the contents of the amended petition, the court continued:

Well, as far as I can tell, the reports I have received, and the exhibits, and after hearing [a probation officer's] report, the Court ordered this woman, on September 7, 1989, to do eight things. Three of them have been reasonably followed through on. That leaves five things unattended. I meant all eight things.

I didn't say if it's convenient, if you feel like it. Don't do it if you have to rearrange your life. None of those things were put out there. I think the order of September 7 was a reasonable order, *meant to correct the situation that brought this case to the attention of the Court.* I want those things done.

. . . .

THE COURT [addressing T.B.]: Therefore, I'll repeat myself one more time.

You are to participate in weekly parenting classes; follow through with all recommendations of the instructor, whether it's convenient or inconvenient for you.

You're to complete the outpatient co-dependency counseling and follow all recommendations of the counselor. You've been assigned with two counselors and dropped because of nonattendance.

You are to maintain adequate income and independent housing to meet the needs of yourself and your child.

You are to cooperate with all professionals involved in both announced and unannounced home visits.

You are to maintain weekly supervised visits with the child [D.M.B.] as arranged by the State Department of Social Services.

You must notify the probation officer within 48 hours of any change of residence, income or any situation.

> You are to participate in Parents United support group on a regular basis and follow all directions of the counselor.

(Emphasis supplied.) On February 25, 1991, at a hearing to terminate T.B.'s parental rights, a probation worker explained that Parents United is a group program for families who have been involved in sexual abuse whether they are a perpetrator or a victim. T.B. testified that she understood Parents United dealt with sexually abused children or sexually abused parents of children and that she was told that the purpose of Parents United was "to reunite children that has been sexually molested." The sexual assault charges regarding her children were dismissed in criminal court in December 1988.

On March 7, 1990, the court further stated, "Each of these items is meant to change the situation as it was when you first came into the Court back in November, 1988." In November 1988, T.B. was charged with sexual abuse of her children. Before the date of the March 7 hearing, the sexual abuse charges had been dismissed not only in the amended petition, but also in the petition regarding T.B.'s other children.

Two plain errors appear on the record in regard to the rehabilitation plan ordered by the juvenile court. First, after the original petition was amended in this case, T.B. was no longer charged with, nor was she adjudicated as, having sexually abused any of her children. The juvenile court never made any specific finding of fact that the Parents United provision of T.B.'s parental rehabilitation plan was reasonable as is required by *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987). It, therefore, was not reasonable for the juvenile court to require T.B. to attend the Parents United program. Secondly, not only was the provision of the rehabilitation plan for T.B. to attend the Parents United program not reasonable, but the juvenile court's requirement that T.B. follow *all* of Parents United's recommendations was an improper delegation of the court's authority. It is the court's duty, not that of counselors, Department of Social Services workers, social workers, child protection workers, or probation officers to fix the terms and limitations of a rehabilitation provision. See, *State v. Salyers*, 239 Neb. 1002, 480 N.W.2d

173 (1992); *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988). A rehabilitation plan, within the purview of Neb. Rev. Stat. § 43-292(6) (Reissue 1988), is a court-ordered plan, that is, a judicially fashioned and determined plan, for parental rehabilitation. *In re Interest of A.H.*, 237 Neb. 797, 467 N.W.2d 682 (1991). The juvenile court's delegation of its authority to evaluators and to Parents United in this case is a superb example of why delegation of a judge's authority cannot be tolerated. In regard to T.B., the court said: "Now, if they asked her to stand in the corner and stack beebees, then that was the recommendation she would have to follow unless she came back in and had the order redone." In the first place, under *In re Interest of J.S., A.C., and C.S., supra*, the juvenile court is required to make specific findings of fact supporting the provisions contained in the parental rehabilitation plan, which provisions must be reasonable. The judge must state his or her findings of fact in the record. Secondly, an evaluator, counselor, probation officer, child protection worker, social worker, or Department of Social Services worker does not have the authority to require a parent to perform unreasonable acts such as "to stand in the corner and stack beebees." Any request of a parent in a rehabilitation plan must be reasonable and in keeping with the specific provisions of the rehabilitation plan approved by the court. If a parent does not comply with an unreasonable request of a counselor, the parent should not be penalized. By the same token, a parent should be made aware that it is the court, not the parent, which determines whether a recommendation by a counselor is unreasonable.

In summary, we find that the separate juvenile court of Douglas County erred in finding that it had jurisdiction over D.M.B. following the adjudication hearing herein and that, therefore, the juvenile court lacked jurisdiction to terminate T.B.'s parental rights in D.M.B.

We therefore vacate the orders of the juvenile court entered following the adjudication and disposition hearings herein and direct the juvenile court to dismiss this case.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

GRANT, J., dissenting.

I respectfully dissent. I am well aware of the frustration expressed by the majority at the actions of the trial court and all concerned with the disposition of this case. It is, however, only the latest in a long series of cases raising questions in connection with the juvenile court system and those participating in it. For a random sampling of past orders of this court which apparently have had no impact on juvenile court cases, see, *In re Interest of S.R., D.R., and B.R.*, 239 Neb. 871, 479 N.W.2d 126 (1992) (in circumstances of this case, 5 years in the juvenile system too long); *In re Interest of R.G.*, 238 Neb. 405, 425, 470 N.W.2d 780, 794 (1991) (practice caution concerning the bill of exceptions; conduct of the trial court in polling those present to determine if conduct of the mother was appropriate held "unfortunate, inappropriate, and not to be condoned"); *In re Interest of N.W. and R.W.*, 238 Neb. 620, 472 N.W.2d 887 (1991) (no service of summons on father; record so confusing that it was difficult to find adjudication hearing; not all hearings on record; no copy of court-ordered rehabilitation plan in record); *In re Interest of A.H.*, 237 Neb. 797, 467 N.W.2d 682 (1991) (within Neb. Rev. Stat. § 43-292(6) (Reissue 1988) reasonable efforts under the direction of the court means efforts in relation to court-ordered plan for parental rehabilitation, not an extrajudicial agreement between a parent and an administrative agency regarding the parent's lifestyle, as has been said many times before); *In re Interest of G.G. et al.*, 237 Neb. 306, 465 N.W.2d 752 (1991) (total denial of due process to a person ordered to show cause why he should not be held in contempt); *In re Interest of D.S. and T.S.*, 236 Neb. 413, 417, 461 N.W.2d 415, 419 (1990) (court improperly restricted activities of guardian ad litem; "inhumane, inconsistent, and inefficient for the State to insist that one's parental rights be terminated because of a mental inability to parent and at the same time demand that the terms of a plan . . . be fulfilled"); *In re Interest of L.C., J.C., and E.C.*, 235 Neb. 703, 457 N.W.2d 274 (1990) (resolution of case left to Department of Social Services, which apparently made no efforts to reunify family; 12 years in juvenile court system too long); *In re Interest of P.M.C.*, 231 Neb. 701, 437 N.W.2d 786 (1989) (leaving one child in unsanitary home while using the fact that the home was

unsanitary as the reason to terminate parental rights to another child was inconsistent); *In re Interest of R.A.*, 226 Neb. 160, 410 N.W.2d 110 (1987) (separate juvenile courts are courts of record and are not free to shield their actions behind a cloak of secrecy by failing to make a verbatim record of the evidentiary proceedings before them); and *In re Interest of D.R. and S.B.*, 217 Neb. 883, 351 N.W.2d 424 (1984) (13 years in juvenile court system too long).

Two of these cases deserve special note: In 1984, we said in *In re Interest of D.R. and S.B.* that 13 years in the system for one of two children was too long, and in 1990, in *In re Interest of L.C., J.C., and E.C.*, we said 12 years in the system was too long. The system may be improving.

Nonetheless, in the case before us, I think it is improper to hold that the juvenile court does not have jurisdiction. The bases for the majority's order seem to be the way the amended petition seeking adjudication was submitted to the court and the kind of evidence submitted at that time.

When the adjudication hearing convened on July 20, 1989, the juvenile court had before it a petition filed November 28, 1988, and amended on July 20, 1989, seeking adjudication that D.M.B. was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988), in that she had been subjected to specified sexual abuse and that "[T.B.] has been involved with the Juvenile Court for two years in an effort to resolve poor parenting skills in reference to said child's three siblings; [T.B.] has failed to comply with the Court's recommendations, resulting in the termination of her parental rights of those siblings." At this point, there cannot be any doubt that the juvenile court had jurisdiction to determine if the child was within the meaning of § 43-247(3)(a).

Pursuant to a plea agreement (although not so stated in the record), T.B., with her counsel, admitted the allegations as to D.M.B.'s birth and residence and the allegations that T.B. had been involved with the juvenile court for 2 years in an effort to resolve poor parenting skills with regard to D.M.B.'s three older siblings, that T.B. had not complied with plans to improve those skills, and that T.B.'s lack of compliance resulted in the termination of her parental rights to those three children. The

State then dismissed sexual abuse allegations which had been testified to, in revolting detail, at D.M.B.'s detention hearing on December 6, 1988.

The admitted facts, then, at D.M.B.'s adjudication hearing were that between November 1986 (2 years before the initial petition in this case) and April 24, 1989 (the date of the termination of T.B.'s rights to the older three children, as set out in *In re Interest of L.B., A.B., and A.T.*, 235 Neb. 134, 454 N.W.2d 285 (1990)), T.B. had not been able to comply with plans to improve her parenting skills sufficiently to avoid termination of her parental rights. On March 31, 1987, D.M.B. was born, and she apparently lived under such conditions. This fact should concern any court. See *In re Interest of P.M.C., supra.* The court also had before it the facts from the detention hearing of December 6, 1988.

At that December 6, 1988, hearing, T.B., her counsel, a Deputy Douglas County Attorney, a representative of the Attorney General's office, an attorney and two employees from the Department of Social Services, a member of the Omaha Police Division, and others were present. Testimony was adduced. The police officer testified that D.M.B. was present during a visit scheduled for T.B. and her three older children, L.B., A.B., and A.T. L.B. told the police officer that at that visitation, A.B. "had got hurt" in A.B.'s vaginal area when "tickled" by T.B. and that L.B. and A.T. had also been tickled. The police officer testified that L.B. and A.B. had been taken to a doctor, who found A.B. had hemorrhaging and L.B. had hemorrhaging and five adhesions "between the labia and the vaginal opening." In separate interviews with L.B. and A.B., both told the police officer of similar "ticklings." A.B. told the police officer that T.B. had "tickled" D.M.B. in the same way on another occasion and that "the baby had cried, but [T.B.] just kept on tickling her." Other details were elicited, both on direct and cross-examination.

A Department of Social Services employee testified as to activities of the three older children after the visit with T.B. on November 8, 1988, and recommended that D.M.B. be detained and not be returned to T.B. The witness testified that her concern for D.M.B.'s welfare was "based on what happened to

the other kids." T.B. also testified and denied she had done anything wrong.

At the conclusion of the December 6, 1988, hearing, the court ordered detention for D.M.B. The matter came on for adjudication on July 20, 1989. For whatever reason, the county attorney agreed to dismiss all the sexual abuse charges and rested the case involving D.M.B. on the sole allegation, for adjudication purposes, that

> [T.B.] has been involved with the Juvenile Court for two years in an effort to resolve poor parenting skills in reference to said child's three siblings [not named, but L.B., A.B., and A.T.]; [T.B.] has failed to comply with the Court's recommendations, resulting in the termination of her parental rights of those siblings.

Why the county attorney was willing to proceed on such a flimsy allegation, and why the juvenile court permitted the procedure, cannot be known, but for the purpose of an adjudication hearing, we should construe the allegation as meaning that T.B. has no parenting skills and has refused to try to learn those skills and that she was therefore unable to properly care for and protect D.M.B.

I think that construction is appropriate, particularly as the adjudication order was not appealed from and is apparently the result of an agreement between counsel. To hold otherwise is to permit lawyers' skills to oust a juvenile court of jurisdiction, when a child in need of protection is before the court.

I cannot say that T.B. has not been denied procedural due process in these proceedings, but I do not agree that the juvenile court is without jurisdiction as to D.M.B. It is true that the case could be refiled, but why run that risk? D.M.B. is entitled to as much due process as her mother, T.B. I would reverse, and remand the cause for further proceedings, including a new termination hearing, if that is necessary.

HASTINGS, C.J., and BOSLAUGH, J., join in this dissent.