IN RE INTEREST OF M. W. AND R. W., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. R.S., APPELLANT.
497 N.W.2d 396
Filed December 8, 1992.    No. A-92-009.

Robert B. O'Neal, of Arps & Schirber Law Offices, for appellant.

Michael D. Wellman, Sarpy County Attorney, and Lawrence D. Gendler for appellee.

SIEVERS, Chief Judge, and CONNOLLY and WRIGHT, Judges.

SIEVERS, Chief Judge.

R.S., the natural mother of M.W. and R.W., minor children, appeals the September 17, 1991, order of the separate juvenile court of Sarpy County, which order terminated her parental rights to her children. An order terminating parental rights is reviewed by an appellate court de novo on the record. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992).

The procedure, and therefore the end result, in this case was fatally flawed by former Judge William D. Staley's practice of conducting off-the-record hearings, which practice was discussed and criticized in the recent decision of *In re Complaint Against Staley*, 241 Neb. 152, 486 N.W.2d 886 (1992), and resulted in Staley's removal from office. This case demonstrates how the failure to respect fundamental procedural safeguards compromises the integrity of the judicial process. Consequently, we must reverse the order terminating the parental rights of R.S. and remand the cause for further proceedings.

## ADJUDICATION ORDER

This matter began with the filing of a juvenile court petition on February 16, 1989, alleging that M.W. and R.W. were children as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) and thus were juveniles within the Nebraska Juvenile Code. The Sarpy County public defender was appointed guardian ad litem for the children, and counsel was appointed for R.S. On February 23, the children were placed in the custody of the Department of Social Services. On May 23, an adjudication hearing was held on the record and the court found that M.W. and R.W. were children as described in § 43-247(3)(a). The matter was continued for disposition pending submission of psychological evaluations of the children and the mother, during which time the Department of Social Services had custody, with visitations by the mother as approved by the department.

An adjudication order, such as that of May 23, 1989, is an appealable order. See *In re Interest of V.T. and L.T.*, 220 Neb. 256, 369 N.W.2d 94 (1985). In order to appeal from that order, a notice of appeal had to be filed within 30 days from the rendition of the judgment. See *In re Interest of Z.R.*, 226 Neb. 770, 415 N.W.2d 128 (1987). No such appeal was taken, and therefore, the adjudication that M.W. and R.W. were children as described in § 43-247(3)(a) is final. We note that the May 23 adjudication hearing was on the record and that the bill of exceptions contains a verbatim transcript.

Because the adjudication order finding M.W. and R.W. to be children as described in § 43-247(3)(a) is final, we believe it is appropriate to only briefly summarize the bases for the adjudication. The evidence from the May 23, 1989, proceeding shows that from February 1 through 13, R.S. and her two children stayed at a shelter for abuse victims. During that time, the children were not always properly fed or dressed by their mother. R.S. was heard to describe bizarre events involving harm to pets, a burned body in a trunk, and bloody knives. The staff saw her engaged in agitated behavior of walking and talking to no one in particular. R.S.' behavior while at the shelter was described as bizarre. Late at night on February 13, R.S. took the children by taxi to Papillion. She was arrested

when she could not pay the fare. As a result, the children were placed in emergency detention and the original juvenile court petition of February 16 was filed, which petition led to the § 43-247(3)(a) adjudication on May 23.

We turn now to the proceedings which occurred after that adjudication, from parental rehabilitative orders through the final termination of parental rights order.

## PARENTAL REHABILITATIVE PLAN

On July 12, 1989, Staley entered a "Findings and Order" which referenced the § 43-247(3)(a) adjudication and ordered the following parental rehabilitative plan:

1. That said children's mother shall maintain a suitable residence for herself and the children herein.

2. That said children and their mother shall cooperate fully with the Department of Social Services in its provision of services herein.

3. That the children herein and said children's mother shall participate in such counseling programs as approved by the Department of Social Services.

4. That said children's mother shall totally abstain from the consumption or use of alcohol and all controlled substances not prescribed by a licensed physician.

In *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 272-73, 417 N.W.2d 147, 161 (1987), the Nebraska Supreme Court held:

[A]fter an adjudication under § 43-247(3)(a) of the Nebraska Juvenile Code and before entering an order containing a rehabilitative plan for a parent, a juvenile court shall inform the juvenile's parent that the court may order a rehabilitative plan and thereafter shall hold an evidential hearing to determine reasonable provisions material to the parental plan's rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained. Because the evidential hearing for a rehabilitative plan is a dispositional hearing, the Nebraska Evidence Rules, §§ 27-101 to 27-1103, shall not apply at such hearing. *The record of proceedings before a juvenile court shall contain*

*the evidence presented at the dispositional hearing held for the purpose of the parental rehabilitative plan. The juvenile court's specific findings of facts supporting the provisions contained in the parental rehabilitative plan shall be stated in the record.* The foregoing procedural rule, which we have enunciated today, is prospective only and shall apply to a juvenile court's order which is entered after the filing date of this opinion and contains a rehabilitative plan for a parent.

(Emphasis supplied.)

Staley's rehabilitative order appears to violate this holding in at least two material ways. First, there is no evidentiary record of any hearing on July 12, 1989, despite the recitation in Staley's findings that "the above-captioned matter came on for a Disposition hearing before the undersigned Judge of the Separate Juvenile Court for Sarpy County . . . ." Second, the juvenile court did not state in the record or in the order any specific findings of fact to support the rehabilitative plan.

Almost a year later, on June 15, 1990, Staley imposed two additional conditions upon R.S. following an on-the-record hearing. Those conditions were (1) that R.S. complete a parenting program arranged by the Department of Social Services and (2) that she participate in her aftercare program recommended by the Norfolk Regional Center. The June 15 proceeding was on the record, but there was no testimonial evidence. There was, however, a discussion among Staley and counsel regarding the fact that R.S. had been released from the Norfolk Regional Center and was participating in a day program at Ivy House. Through counsel, R.S. requested that if the children would not be returned to her at that time, that regular visits be started and family therapy instituted so that whatever needed to be done could be done to get the family reunited.

During this June 15 hearing, the "social file" from the Department of Social Services, which file contained the Child Protective Services investigation dated March 20, 1989, was reviewed. The social file provides evidence which could arguably support the first four conditions of the plan which were earlier ordered on July 12, 1989, as well as support the

imposition of the two additional conditions on June 15, 1990. However, because of our ultimate disposition, we need not detail the contents of the social file.

The rehabilitative plan originally entered on July 12, 1989, was procedurally defective as there was no hearing on the record and no findings of fact by the court to support the plan. However, there was never any appeal from the original entry of the order for this plan or from any of the subsequent orders which confirmed it. A rehabilitative plan which required a parent to participate in psychological therapy was held to be a final order, at least to the extent that the Department of Social Services had not perfected its appeal within 30 days, when the plan required the department to pay for the therapy. See *In re Interest of B.M.H.*, 233 Neb. 524, 446 N.W.2d 222 (1989). The plan involved here contains similar provisions, for example, aftercare following R.S.' discharge from the Norfolk Regional Center. Thus, although the plan appears to have been the product of improper procedure, it is an order from which no appeal was taken. However, when termination of R.S.' parental rights is sought because of failure to comply with the plan, the reasonableness of the plan's provisions and the willfulness of R.S.' alleged failure to comply with the plan are still matters at issue in the termination proceedings. See *In re Interest of A.Z., B.Z., and R.Z.*, 230 Neb. 291, 430 N.W.2d 901 (1988).

Failure to comply with a parental rehabilitative plan is a statutory ground for termination under Neb. Rev. Stat. § 43-292(6) (Reissue 1988), and this was the basis for the termination of parental rights petition against R.S. However, the standard of proof is clear and convincing evidence, and the State must prove that the parent has willfully failed to comply, in whole or in part, with a reasonable provision which is material to the rehabilitative objective of the plan and also that the termination is in the best interests of the children. See *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987).

## TERMINATION OF PARENTAL RIGHTS

The State filed a supplemental petition on December 28, 1990, amended on January 18, 1991, seeking termination of

R.S.' parental rights, based on her failure to comply with the rehabilitative plan. The record reveals that at the March 7, 1991, hearing to address that amended petition, R.S. was present with her attorney, as was the natural father of M.W. and R.W. During the hearing, there was an agreement of counsel to receive into evidence six exhibits dealing with R.S. and her children in lieu of live testimony. Generally, these exhibits were reports from social workers, psychologists, and psychiatrists. The court inquired of R.S. as to whether she understood the import of the stipulation regarding receipt of the six exhibits into evidence in lieu of the live testimony of those individuals, which essentially meant that R.S. was sacrificing her right to cross-examine. R.S. agreed to the stipulation.

It was also noted at that hearing that R.S. was then in therapy in Wisconsin, and therefore, her attorney requested an additional 60 days to have the six exhibits reviewed by the Wisconsin therapist and for a response to be submitted to the court. The court stated at the conclusion of the March 7 proceeding:

> As far as the Court is concerned, since the State hasn't rested and [R.S.] hasn't rested, the adjudication is wide open at the present time. You're still free to submit anything you wish.
>
> . . . .
>
> . . . I'm going to continue that for further disposition in 60 days because these two actions concerning these two children are so interrelated.

A written order continuing the six conditions forming the parental rehabilitative plan was entered at this hearing, with a further disposition hearing to be held May 9, 1991. That hearing was continued until July 11, at which time proceedings were held on the record and the court received into evidence a report from the Department of Human Services' Clinical and Family Services Division in Juneau, Wisconsin. This report provided some favorable evidence of progress in R.S.' mental condition, as well as evidence of her strong desire for reunion with her children. The report did, however, contain negative information about her living arrangements. At the July 11 hearing, counsel for R.S. was present, but R.S. was not. No

testimony was taken, and the transcript of these proceedings principally involved an extensive discussion between court and counsel about the procedure to follow at the next hearing and how to handle what the court articulated as the following two issues: (1) whether grounds for termination existed and (2) whether the best interests of the children would be served by termination. Counsel for R.S. indicated that communication with his client was difficult, but that he would want her to testify, certainly on the best interests issue and perhaps also on the "grounds issue." Her attorney finally told the court that R.S.

> is now taking her medications and she is now involved consistently in a mental health program, and that she is working hard to get herself better, and therefore it is not in the best interests of these children for her parental rights to be terminated. So I see it as my evidence being — really going to the second issue [best interests].

With respect to the grounds issue, R.S.' counsel indicated that he could not unequivocally say without consulting R.S. whether he had any intention of putting on evidence to contest whether legal grounds existed for the termination under § 43-292. Consequently, the court established a procedure for future hearings, which procedure was agreed to by counsel for R.S. and the State. That procedure gave R.S.' counsel 10 days in which to file an application to be heard further on the issue of whether there were grounds for termination of R.S.' parental rights. The filing of an application would have triggered another hearing on whether there were grounds for termination, whereas the failure to file an application essentially constituted a waiver for a hearing on that issue and left only the best interests issue open for hearing. The record does not contain such an application by R.S. or her attorney. This agreement between counsel and the court occurred without any record of R.S.' consent to waive a hearing on the issue of whether grounds existed for termination. The Supreme Court stated in *In re Interest of D.M.B.*, 240 Neb. 349, 360, 481 N.W.2d 905, 913 (1992), that in a juvenile case, "[c]ounsel cannot waive rights which are personal to their clients. Personal rights of a litigant must be waived by the litigant personally."

Although the Supreme Court has recently held that parental

physical presence at a termination hearing is not required, the parent must nevertheless be afforded procedural due process for that hearing. See *In re Interest of L. V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). " 'For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard. . . ." ' " *Id.* at 413, 482 N.W.2d at 257 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)). Furthermore,

[w]hen a person has a right to be heard, procedural due process includes notice to the person whose right is affected by a proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisonmaker.

*In re Interest of L. V.*, 240 Neb. at 413-14, 482 N.W.2d at 257.

At the most basic level, R.S. had a right to be heard on whether grounds existed for termination of her parental rights, and this record fails to document that R.S. personally waived her right to be heard on the issue of whether grounds existed for termination.

Additionally, the trial court provided for a subsequent hearing on the second issue of whether termination was in the best interests of the children. Staley specifically stated:

I will read Exhibits 1 through 7 and either find that the contents sustain a finding by clear and convincing evidence that one of the grounds exists, *in which case I will schedule it for hearing on the issue of whether it's in the best interests of the children to terminate parental rights,* or the amended supplemental petition would be dismissed.

(Emphasis supplied.)

The bill of exceptions is absolutely devoid of any record that a subsequent hearing ever took place after July 11, 1991, to determine whether grounds existed for termination or whether it was in the best interests of the children. Despite the absence of

such a hearing, Staley nevertheless entered an order terminating R.S.' parental rights on September 17, 1991. That order referred only to the July 11 hearing, which was not to be the final hearing on the matter. Staley additionally ordered that custody of the children was to remain with the Department of Social Services, which was also given authority to consent to the adoption of the children.

On October 25, 1991, a hearing was held to address an application for new trial and a request that the court appoint a guardian ad litem for R.S. R.S.' attorney asserted that R.S.' condition had been deteriorating in the prior several weeks and that he was uncertain whether she was able to understand the proceedings. The trial court then appointed a guardian ad litem. R.S. assigns as error the failure of the court to appoint a guardian ad litem earlier in the proceedings; however, one has now been appointed, and our disposition means that we need not address this claim any further. The motion for new trial was ultimately overruled on December 2, 1991, and R.S.' attorney timely perfected this appeal with respect to the order of September 17, 1991, terminating the parental rights of R.S.

It cannot be disputed that after July 11, 1991, there was to be an evidential hearing, at which time R.S. would have had an opportunity to testify and introduce other evidence, perhaps, on the issue of whether grounds for termination existed, but without question on whether termination was in the best interests of the children. If any hearing was ever held, it was off the record. Thus, there is no verbatim transcript of evidence and proceedings for this court to review. The September 17 termination order referenced only the July 11 hearing, with no finding as to what clear and convincing evidence supported the court's conclusion that grounds for termination existed or why such termination was in the best interests of the children. The juveniles' best interests are the primary consideration in determining whether parental rights should be terminated. See *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987). There is no record for this court's de novo review. R.S.' assignment of error is that there is a lack of evidence to support termination. Given the state of the record, that assignment is obviously well taken.

As noted in *In re Complaint Against Staley*, 241 Neb. 152, 486 N.W.2d 886 (1992), the law is clear that in the absence of a valid waiver by all parties to the proceedings, a verbatim transcript of those proceedings shall be made and preserved in the separate juvenile court. *In re Interest of A.M.H.*, 233 Neb. 610, 447 N.W.2d 40 (1989), left no doubt that off-the-record disposition hearings were not allowed absent a valid waiver by all parties.

There is no waiver by R.S. in the record with respect to the grounds for termination hearing, nor is there a waiver by either R.S. or her counsel for the hearing which the court scheduled to address the issue of the best interests of the children. Without proper waiver, the hearings should have occurred, followed by specific factual findings by the court in support of its orders and decisions.

Because of the requirement that the court have on-the-record proceedings in juvenile matters, as well as R.S.' due process right to be heard, it was clearly error for the court to enter its order of September 17, 1991, terminating the parental rights of R.S. In addition, R.S.' due process rights include de novo review by an appellate court of the trial court's proceedings and decision. *In re Complaint Against Staley*, 241 Neb. at 180, 486 N.W.2d at 902, states that there was a course of conduct engaged in by this judge which appeared to be "systematically designed to preclude appellate review of proceedings in his court," and this case may be an example.

To the extent that our decision creates uncertainty or the potential for further emotional trauma to these children, we can only express our regret. However, termination of parental rights is a subject of due process protection under the U.S. Constitution and the Nebraska Constitution. See, *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Interest of L. V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). The Nebraska Supreme Court recognizes:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents

retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*In re Interest of L. V.*, 240 Neb. at 412, 482 N.W.2d at 256 (quoting *Santosky v. Kramer, supra*).

We cannot say whether grounds existed for termination of R.S.' parental rights or whether the best interests of these children require termination. Our de novo review is regrettably obstructed by the improper procedures employed by the trial court, which failed to follow clear dictates from the Nebraska Supreme Court as to the conduct of juvenile proceedings. As a result, R.S. was denied her right to fundamentally fair procedures. Accordingly, we reverse the termination and remand the cause for further proceedings. The adjudication order of May 23, 1989, finding M.W. and R.W. to be adjudicated children under § 43-247(3)(a) is affirmed, and the custody of these children shall be maintained in the Department of Social Services pending further proceedings upon remand to the separate juvenile court of Sarpy County, which shall address whether grounds exist for the termination of parental rights and whether termination is in the best interests of the children.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.